# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### May 1, 2020 Session

## ZULA WORTHAM v. KROGER LIMITED PARTNERSHIP I ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-003147-17  Robert Samual Weiss, Judge**

———————————————

**No. W2019-00496-COA-R3-CV – Filed July 16, 2020**

———————————————

Defendant grocery store appeals a jury verdict against it after a shopper fell in its store while operating a three-wheeled cart. The grocery store argues that the trial court erred in denying its motion for directed verdict, in granting summary judgment to a third-party defendant, and in not granting a new trial or remittitur of the substantial verdict. Because the grocery store has not met its burden to show reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S. delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and FRANK G. CLEMENT, JR., P.J., M.S., joined.

Kevin D. Bernstein, Memphis, and Lance W. Thompson, Nashville, Tennessee, for the appellants, Kroger Limited Partnership I, and The Kroger Company.

Patrick M. Ardis and Daniel V. Parish, Memphis, Tennessee, for the appellee, Zula Wortham.

Richard Glassman and Lewis W. Lyons, Memphis, Tennessee, for the appellee, The Peggs Company, Inc.

## OPINION

### BACKGROUND

On August 25, 2016, 88-year old Plaintiff/Appellee Zula Wortham went to shop at a store owned by Defendant/Appellant Kroger Limited Partnership ("Kroger"). Ms. Wortham's adult daughter, Regina Millen, retrieved a shopping cart for Ms. Wortham from the front lobby or vestibule. Ms. Wortham thereafter used the cart for approximately half

an hour while shopping without incident. Near the end of her shopping, with her cart loaded with groceries, Ms. Wortham turned the cart to the right; the cart tipped over and caused Ms. Wortham to fall to the floor. The tipped over cart was discovered to be missing a wheel; the missing wheel was never located. Ms. Wortham suffered significant injuries from the fall, including a fractured bone and an injured hip that required surgery to repair, as well as a stay in a rehabilitation center. Ms. Wortham's medical bills totaled nearly $90,000.00. Approximately one month after the accident, Ms. Wortham retained counsel, who sent a letter to Kroger asking that it retain all video-recorded evidence of the incident.

Ms. Wortham filed suit against Kroger[1] under both ordinary negligence and premises liability theories in July 2017. Ms. Wortham alleged that her injuries resulted when the wheel separated from her shopping cart. Kroger answered the complaint in September 2017, alleging that Ms. Wortham's injuries were proximately caused by a non-party, the Peggs Company, Inc. ("Peggs"), who was responsible for maintaining and servicing the carts pursuant to a contract with Kroger. Kroger also alleged comparative fault against Peggs and Ms. Wortham. Ms. Wortham thereafter sought and was granted leave to amend her complaint to add Peggs as a party. Peggs answered in January 2018, denying that it was liable for Ms. Wortham's injuries. In addition to answering Kroger's amended complaint, Kroger filed a cross-claim against Peggs for breach of contract and indemnity. This cross-claim was eventually severed from the underlying tort action by consent order of July 20, 2018, and is not at issue in this appeal.[2]

---

[1] Ms. Wortham later amended her complaint to name the correct entity.

[2] Both parties assume that when the cross-claim was severed by consent order from the tort case at issue in this appeal, the final judgment in favor of Ms. Wortham was appealable as a final judgment. *See* Tenn. R. App. 3 (providing appeals of final judgments); The consent order specifically cites Rule 42 of the Tennessee Rules of Civil Procedure for support for the severance of the two claims. *See* Tenn. R. Civ. P. 42.02 ("The court for convenience or to avoid prejudice may in jury trials order a separate trial of any one or more claims, cross-claims, counterclaims, or third-party claims, or issues on which a jury trial has been waived by all parties. For the same purposes the Court may, in nonjury trials, order a separate trial of any one or more claims, cross-claims, counterclaims, third-party claims, or issues.") In at least one case, however, this Court has held that Rule 42.02 does not provide for a true severance of the two actions, but merely provides for a separate trial. *See Childress v. Union Realty Co.*, No. W1998-00658-COA-R3-CV, 1999 WL 1336047, at *4 (Tenn. Ct. App. Dec. 15, 1999) ("[T]he trial court in the instant case did not sever the third party action under Tenn.R.Civ.P. 21, but rather ordered a separate trial under Tenn.R.Civ.P. 42.02[.]") Because the claims were not properly severed, adjudication of one case did not result in a final appealable judgment. *Id.* ("Since the third party action was still pending when the Judgment appealed from in this case was entered, that Judgment is not a final judgment and this appeal is therefore premature.") Here, we have difficulty seeing how the third-party claims were truly severed, as the trial court continued to enter orders related to the third-party claims under the same docket number.

Although neither party raises this issue on appeal, it implicates our subject matter jurisdiction. Without a final judgment, this Court does not have subject matter jurisdiction. Tenn. R.App. P. 3(a). Subject matter jurisdiction concerns the authority of the court to hear a matter and cannot be waived by agreement of the parties. *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996). The court may consider subject matter jurisdiction sua sponte. Tenn. R.App. P. 13(b); *Ruff v. State*, 978 S.W.2d 95, 98 (Tenn. 1998).

This Court, however, may waive the final judgment requirement for good cause shown. *See* Tenn.

- 2 -

Various motions and responses were filed, including motions related to protective orders, motions to strike, and motions to sever. Relevant to this appeal, Ms. Wortham was permitted to amend her claim to increase the ad damnum, but the trial court denied her request to include a claim for punitive damages.

On October 10, 2018, Peggs filed a motion for summary judgment regarding Ms. Wortham's claims against it. Therein, Peggs argued, inter alia, that it did not owe a duty to Ms. Wortham, that it did not breach its duty, and that there was no proof of causation.[3] According to Peggs' statement of undisputed material facts, the relevant undisputed facts were as follows:

> 4. Though it is undisputed for the purposes of this Motion the subject cart was missing the front right wheel when it tipped over and Plaintiff fell, there is no evidence as to when the wheel actually separated from the cart.
> 5. The wheel and any other hardware that would secure it to the cart have never been located.
> 6. The cause of the wheel becoming detached is unknown.
> 7. The condition of the cart when Peggs arrived to perform work on Kroger's fleet of carts is unknown.
>
> * * *
>
> 9. There is no evidence as to what work the Peggs technician on site . . . performed on the subject cart during the service call of August 11-August 12, 2016.
> 10. There is no evidence of what did or did not happen to the cart during the time period between when Peggs left the subject store on August 12, 2016,

R.App. P. 2. ("For good cause, including the interest of expediting decision upon any matter, the Supreme Court, Court of Appeals, or Court of Criminal Appeals may suspend the requirements or provisions of any of these rules in a particular case on motion of a party or on its motion and may order proceedings in accordance with its discretion[.]"). The Tennessee Supreme Court has previously held that our discretion under Rule 2 allows us to suspend the requirements of Rule 3 limiting our jurisdictions to final judgments. **Bayberry Assocs. v. Jones**, 783 S.W.2d 553, 559 (Tenn. 1990) ("[W]e find no bar to the suspension of Rule 3(a).").

Here, we conclude that even if the underlying judgment is non-final, good cause exists to proceed with this appeal. Kroger's appeal of the jury verdict has already been consolidated with the appeal of Peggs' motion for summary judgment. Thus, only those claims that are totally unrelated to Ms. Wortham's recovery remain pending in the trial court. Declining to adjudicate this appeal would only serve to delay resolution of the issues presented, without any known advantage. Thus, we exercise our discretion to proceed with this appeal notwithstanding the pending claims in the trial court.

[3] Later, Peggs filed a similar motion seeking summary judgment as to Kroger's third-party claims against Peggs. Many of the alleged undisputed facts were the same in support of this motion. Kroger responded to this motion as well. However, the trial court's decision to partially grant this motion is not at issue in this appeal, as Kroger's third-party claims were ostensibly "severed" from Ms. Wortham's underlying tort action.

and Plaintiff's fall on August 25, 2016.

* * *

17. It is unknown when the subject cart was actually delivered to the subject store.

(Internal citations omitted). The statement of alleged undisputed material facts also contained additional facts concerning the work that Peggs' technician performed during the last visit prior to Ms. Wortham's fall. These facts included allegations that the condition of the cart when Peggs left the Kroger store was unknown and the lack of evidence concerning the work the technician performed. Although Kroger responded in opposition to this motion, it did not deny any of the facts set out verbatim above; Kroger did attempt to dispute the facts that related to the work that Peggs performed at the Kroger location during the service call prior to Ms. Wortham's accident. Kroger also asserted that material facts remained in dispute about whether Peggs committed negligence in its inspection and maintenance of the carts at the Kroger location at issue. Finally, Kroger asserted that Peggs' motion was rendered moot when Peggs settled with Ms. Wortham.[4] For her part, Ms. Wortham did not dispute any of Peggs' alleged undisputed facts.

Kroger also filed a motion for summary judgment, arguing, *inter alia*, that Kroger did not owe a duty of care because a three-wheeled cart was not unreasonably dangerous or unsafe and that Ms. Wortham could not show actual or constructive notice of the defective cart. Kroger supported its motion with a memorandum and statement of undisputed material facts. Ms. Wortham eventually responded in opposition to Kroger's motion.

On December 21, 2018, Ms. Wortham filed a number of motions in limine, as well as a motion seeking sanctions for Kroger's alleged spoliation of evidence. With regard to spoliation, Ms. Wortham argued that Kroger had destroyed video-recorded evidence from the Kroger store in the hours before and after the accident, as well as the full incident report and a training video concerning cart inspections. Ms. Wortham asked that Kroger be found to have intentionally spoliated the evidence and that sanctions, including striking the allegation of comparative fault, imposition of an adverse inference, and exclusion of evidence, be imposed.

On January 9, 2019, the trial court granted Peggs' motion for summary judgment as to the claims brought by Ms. Wortham. Therein, the trial court ruled that

[Ms. Wortham] cannot establish the requisite element of causation against Peggs. There is insufficient evidence to support a finding that [Ms.

---

[4] The terms of the settlement are not contained in the record.

- 4 -

Wortham's] injuries, if any, arose from any services or work performed by Peggs or any of its employees or agents, nor is there any evidence to support a finding that [Ms. Wortham's] injuries were caused by any action, inaction or omission on the part of Peggs or any of its employees or agents.

The trial court designated this ruling as final under Rule 54.02 of the Tennessee Rules of Civil Procedure, and Kroger timely appealed the trial court's ruling to this Court.[5]

On January 14, 2019, the trial court entered an order granting Ms. Wortham's request to dismiss her premises liability claim. On the same day, the trial court granted in part and denied in part Peggs' motion for summary judgment as to Kroger's cross-claims. In particular, the trial court again ruled that there was insufficient evidence to show that Peggs committed any negligence that resulted in Ms. Wortham's injuries. As such, the trial court dismissed Kroger's indemnity claims. The trial court, however, reserved ruling on Kroger's claim for breach of contract.

Also on January 14, 2019, the trial court granted Ms. Wortham's motion for sanctions against Kroger for spoliation of the video-recordings in the store on the day of the incident. Therein, the trial court found that despite twenty-two cameras being operational on the day in question and both verbal and written requests to preserve evidence, the videos "were not preserved." The trial court therefore ruled that it would instruct the jury "regarding spoliation of evidence by Kroger and under Tennessee Pattern Jury Instruction 2.04-Absence of Evidence with respect to the missing videos from the day of the incident."

Trial occurred over four non-consecutive days in January 2019. It was undisputed that the cart Ms. Wortham was operating that day only had three wheels at the time of Ms. Wortham's fall. Although Kroger employees thoroughly inspected the store and vestibule for the missing wheel and housing, it was never located. According to Ms. Wortham, prior to her accident, she lived an independent and largely pain-free life. Ms. Wortham generally lived alone during this time. She also enjoyed grocery shopping, cooking weekly large meals for her family, and attending activities and services at her church and the senior citizen center, including trips to casinos, playing games, and taking walks for exercise. Before the accident, Ms. Wortham was able to walk mostly without a cane and stand for significant periods of time. Ms. Wortham's daughter, who was present on the day in question, echoed Ms. Wortham's testimony.

The fall caused Ms. Wortham to fall to her knees and hip on the floor. According to Ms. Wortham, she immediately felt pain in her left knee and hip. She was transferred by ambulance to a local hospital, where she was diagnosed with a fractured thigh and an

---

[5] Later, Kroger's appeal from the jury verdict was consolidated with Kroger's appeal of the summary judgment ruling. As such, both are at issue in this appeal.

- 5 -

injured knee. Ms. Wortham thereafter underwent a surgical repair of the hip involving the placement of alignment hardware. Ms. Wortham remained in the hospital for four days following the surgery, where she was prescribed pain medication. During her hospital stay, Ms. Wortham could not stand, walk, dress herself, or bathe independently. Ms. Wortham's hospital stay was followed by a fourteen-day stay in a rehabilitation center. During this stay, Ms. Wortham was required to participate in approximately three hours of therapy five days per week. She continued to be prescribed pain medication during this time, which she testified helped "for a while." Although Ms. Wortham suffered no complications from her surgery and she recovered well, she was still required to complete six weeks of additional at-home rehabilitation upon her release. Ms. Wortham incurred medical bills in the amount of $87,914.80 for her treatment.

According to Ms. Wortham, she continued to suffer pain nearly every day even after her ostensible recovery, although the pain was intermittent. Ms. Wortham's treating physician, Dr. Donald Sullivan, also testified that while prolonged pain was not a certainty, it was likely that a person of Ms. Wortham's age would have at least an "annoying ache" for the rest of her life following her injury. This pain, Dr. Sullivan testified would be of a less severe type so as to not require "narcotic pain relievers any longer." Dr. Sullivan believed, however, that Ms. Wortham's pain was well-managed through medication and that it was likely that Ms. Wortham would not notice any lingering pain at some point.

According to Ms. Wortham, the loss to her independence was even more difficult, as "it's really hard not being able to do things for yourself." Ms. Wortham testified that she can no longer drive, can no longer stand for long periods of time, can no longer walk without assistance, and can no longer cook meals for her family. Ms. Wortham is also unable to do her own housework or attend many of the activities she once did. For a period of time, Ms. Wortham incurred an expense of $100.00 per month for housekeeping, a task that she could perform without substantial assistance prior to the fall.

Eric Sergeant, the manager of the Kroger location at the time of Ms. Wortham's fall, and Lisa Phillips, the Division Safety Manager for Kroger, testified regarding, inter alia, Kroger's inspection and maintenance procedures. First, Kroger performs monthly safety inspections, which includes inspections of the shopping carts. The monthly inspection that occurred prior to Ms. Wortham's fall did not indicate a problem with a cart missing a wheel. The monthly inspection is not the only protocol in place to ensure that damaged and defective carts are not left in use. Rather, baggers or "courtesy clerks" have primary responsibility for the daily task of bringing shopping carts from the parking lot into the front area of the store, known variously as the lobby or vestibule. Customers then remove the carts from the vestibule for use throughout the store. Mr. Sergeant admitted, however, that Kroger does not have a specific written corporate policy concerning the inspection of carts for wobbly or missing wheels by Kroger employees. Instead, Kroger engaged in hands-on training with courtesy clerks for this purpose. Additionally, Kroger entered into a contract with Peggs for the regular inspection and maintenance of carts on a periodic

basis. In fact, an employee from Peggs was present in this store for this purpose less than two weeks prior to Ms. Wortham's fall.

Mr. Sergeant testified, however, that his courtesy clerks are instructed to perform a "visual inspection when retrieving [carts] from [the] parking lot to bring it back into the store." This inspection involves both an "[e]ye and ear test" and a "roll test." For the "eye and ear test," courtesy clerks are instructed to take carts out of service that "are real creaky or loud, or get wobbling noise baskets" or issues with the "wheel alignment." According to Mr. Sergeant, such an inspection was based on "common sense." Mr. Sergeant agreed that the eye and ear test is performed "every time a shopping cart is placed in the lobby from the parking lot." Ms. Phillips confirmed that courtesy clerks are instructed to "continuously" inspect the carts. Mr. Sergeant further testified that he "coach[es]" his employees to remove three-wheeled carts from circulation. Still, Mr. Sergeant testified that he had no knowledge of any accidents caused by three-wheeled carts prior to Ms. Wortham's fall.

Dr. Lila Laux also testified in support of Ms. Wortham. Dr. Laux holds a doctorate in Industrial Psychology with a specialty in human factors engineering. According to Dr. Laux, "[h]uman factors engineers try to figure out how to make those things work for the people that are going to have to use them." Dr. Laux also testified that she is a gerontologist, meaning that she specializes in designing systems taking into account the aging population. In general, Dr. Laux testified that Ms. Wortham's actions on the day of the accident were consistent with the reasonable and foreseeable shopper. Moreover, Dr. Laux testified that most customers expect shopping carts to be maintained and in usable condition when placed for use in a store.

At the close of the plaintiff's proof, Kroger moved for a directed verdict, which was denied by the trial court. Kroger thereafter declined to put on any additional proof, and the parties engaged in a conference concerning the jury instructions. After much discussion, the trial court ruled that the only instruction regarding the destruction of the video tape would the instruction contained in Tennessee Pattern Jury Instruction 2.04-Absence of Evidence. The parties thereafter made their closing arguments and the jury retired to deliberate. Thereafter, the jury posed a question to the trial judge as to whether it could award punitive damages and whether another verdict form was necessary to do so. After a discussion with counsel, it was agreed to instruct the jury that punitive damages were not available. Eventually, the jury returned a verdict in Ms. Wortham's favor. The trial court entered an order on the jury's verdict on February 11, 2019. Therein, the jury found Kroger 100% liable for Wortham's injuries and awarded her $100,000.00 in economic damages and $2,600,000.00 in noneconomic damages. In accordance with Tennessee Code Annotated section 29-39-102, the trial court reduced the noneconomic damages to $750,000.00.

Kroger thereafter filed motions for judgment notwithstanding the verdict, to alter or

amend, for remittitur, and for a new trial. Kroger's motion for new trial raised the following issues: (1) excessive verdict; (2) improper jury instructions; (3) the exclusion of evidence related to Kroger's contract with Peggs; (4) misconduct of Ms. Wortham's counsel; (5) the admission of Dr. Laux's testimony; (6) the giving of the "absence of evidence" jury instruction; (7) and that the jury verdict was contrary to the weight of the evidence and based on speculation. Ms. Wortham also filed a motion seeking to declare the statutory cap on noneconomic damages unconstitutional. The State of Tennessee therefore sought and was granted leave to intervene to defend the constitutionality of Tennessee Code Annotated section 29-39-102. The trial court eventually entered an order denying Ms. Wortham's request to declare the damage cap unconstitutional. The trial court granted Kroger's motion to alter or amend, reducing the $100,000.00 in economic damages to $90,114.80, representing medical bills and house cleaning expenses. The trial court denied the remainder of Kroger's post-trial motions. This appeal followed.

## ISSUES PRESENTED

Kroger raises the following issues, which are taken and slightly restated from its brief:

1. Whether the trial court correctly denied Kroger's motion for directed verdict and judgment notwithstanding the verdict, as Wortham's tort claims sounded in ordinary negligence and not premises liability.

2. Whether the trial court was correct in limiting the testimony offered by Kroger as to Peggs' involvement in this matter.

3. Whether the trial court correctly ruled that Kroger failed to meet its prima facie burden as to its affirmative defense of comparative fault against Peggs and disallowed apportionment of fault as to Peggs.

4. Whether the trial court correctly admitted Wortham's expert Dr. Laux.

5. Whether the trial court correctly denied Kroger's motion for new trial.

6. Whether the trial court correctly denied Kroger's motion for remittitur.[6]

## DISCUSSION

## I.    Directed Verdict

---

[6] Initially, Ms. Wortham raised an affirmative issue as to the constitutionality of Tennessee's non-economic damages cap, Tennessee Code Annotated section 29-39-102. Prior to oral argument, however, the Tennessee Supreme Court issued its opinion upholding the constitutionality of section 29-39-102 on the same grounds raised by Ms. Wortham. *See* **McClay v. Airport Mgmt. Servs., LLC**, 596 S.W.3d 686 (Tenn. 2020). As such, Ms. Wortham withdrew this issue at oral argument.

Kroger first argues that the trial court should have directed a verdict in its favor on Ms. Wortham's negligence claim, thereby precluding Ms. Wortham from relief. As support, Kroger contends that Ms. Wortham failed to present evidence sufficient to show a breach of the duty of care by Kroger that resulted in Ms. Wortham's injuries. Moreover, Kroger contends that the gravamen of this case is premises liability, rather than simple negligence, and that Ms. Wortham wholly failed to present evidence that Kroger had actual or constructive notice of a dangerous condition on its property. For her part, Ms. Wortham denies that this case involves premises liability, as she voluntarily dismissed her premises liability claim in favor of proceeding on simple negligence. Ms. Wortham also contends that under either standard, she met her burden to present sufficient evidence of negligence and notice to submit this issue to the jury.

We therefore begin with the standard necessary to obtain a directed verdict in a jury trial. When reviewing the trial court's decision to deny a motion for directed verdict, we "must take the strongest legitimate view of the evidence in favor of the non-moving party, construing all evidence in that party's favor and disregarding all countervailing evidence." *Johnson v. Tennessee Farmers Mut. Ins. Co.*, 205 S.W.3d 365, 370 (Tenn. 2006). A motion for a directed verdict should not be granted unless reasonable minds could reach only one conclusion from the evidence. *Id.* The standard of review applicable to a motion for a directed verdict therefore does not permit this Court to weigh the evidence or to evaluate the credibility of witnesses. *Id.* Accordingly, "we review the evidence most favorably to the party against whom the motion is made, give that party the benefit of all reasonable inferences from the evidence, and disregard all evidence contrary to that party's position." *Richardson v. Miller*, 44 S.W.3d 1, 30 (Tenn. Ct. App. 2000).

Thus, to survive a motion for directed verdict, the plaintiff must present some evidence from which a reasonable juror could find all the required elements of the plaintiff's cause of action. *See id.* ("To avoid a directed verdict [], the non-moving party must present some evidence on every element of its case—enough evidence to establish at least a prima facie case."). Ms. Wortham insists that her claim involves only simple or ordinary negligence, the elements of which are elementary: duty, breach of duty, causation, and injury or loss. *See Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993) ("No claim for negligence can succeed in the absence of any one of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause.").

On the other hand, a premises liability claim is a specific type of negligence claim that seeks to hold property owners liable for injuries negligently caused by defects or dangerous conditions on their property. We have described the parameters of the claim thusly:

> Business proprietors are not insurers of their patrons' safety.

Nonetheless, they are expected to exercise due care under all circumstances. This means that the premises owner must maintain the premises in a reasonably safe condition by removing or repairing dangerous conditions or by helping customers avoid injury by warning them of such dangerous conditions. If the premises owner neither knew of the dangerous condition nor could have discovered the condition through the exercise of reasonable care, the premises owner will not be held liable for breaching his duty to exercise due care. The duty analysis requires the court to "balance the foreseeability and gravity of the potential risk of harm to a plaintiff against the burden imposed on the defendant in protecting against that harm."

*Williams v. Linkscorp Tennessee Six, L.L.C.*, 212 S.W.3d 293, 296 (Tenn. Ct. App. 2006) (internal citations omitted). A premises liability claim incorporates the elements of an ordinary negligence claim, along with specific elements related to notice:

To establish a prima facie case for premises liability based upon negligence, the plaintiff must prove (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant that was below the standard of care, amounting to a breach of a duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation. For the premises owner to be liable for a dangerous and defective condition on his property, the plaintiff must prove each of the elements of negligence and either (1) that the condition was caused or created by the premises owner or his agent, or (2) if the condition was created by someone other than the owner or his agent, that the premises owner had actual or constructive notice of the dangerous or defective condition prior to the accident.

*Id.* at 296 (internal citation omitted). "Constructive notice" has been defined by the Tennessee Supreme Court as "'information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it.'" *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 15 (Tenn. 1997) (quoting *Kirby v. Macon County*, 892 S.W.2d 403, 409 (Tenn. 1994)) (involving governmental tort liability). The court further held that an entity will be charged with constructive notice "if the fact or information could have been discovered by reasonable diligence and the [] entity had a duty to exercise reasonable diligence to inquire into the matter." *Id.* In the context of premises liability, courts have held that plaintiffs can show constructive notice by showing "a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence," making the dangerous condition reasonably foreseeable to the premises owner. *Blair v. W. Town Mall*, 130 S.W.3d 761, 765–66 (Tenn. 2004). In the alternative, constructive notice can be established by proving that the dangerous condition existed for a sufficient length of time that the premises owner, by exercising due care, should have discovered the dangerous condition. *Simmons v. Sears,*

***Roebuck & Co.***, 713 S.W.2d 640, 641–42 (Tenn. 1986).

Kroger contends that because Ms. Wortham was injured by an alleged dangerous condition on Kroger's property, the premises liability jurisprudence is applicable and a directed verdict should have been granted in light of Ms. Wortham's failure to present proof of actual or constructive notice, along with the other required elements for a negligence claim. Kroger submits that its research has revealed a multitude of cases in which injuries caused by allegedly defective shopping carts were characterized as premises liability actions, rather than actions based on simple negligence. We agree that many cases from other jurisdictions analyze shopping cart injuries through the lens of premises liability jurisprudence. *See, e.g.,* ***Bernstein v. Grand Union Co.***, 148 Conn. 726, 727, 169 A.2d 267, 268 (Conn. 1961) (affirming a directed verdict where the plaintiff failed to show that the defendant had actual or constructive notice of the alleged dangerous condition); ***Marsh Supermarkets, Inc. v. Sosbe***, 146 Ind. App. 48, 50, 252 N.E.2d 597, 598 (1969) (although not using the term "premises liability" discussing the injury allegedly caused by "cart which was defective and which [the defendant] either knew was defective or in the exercise of reasonable care should have known was defective"); ***White v. J. Weingarten, Inc.***, 270 So. 2d 632, 633 (La. Ct. App. 1972) (discussing the duty of a storekeeper to keep its premises safe); ***Brady v. Great Atl. & Pac. Tea Co.***, 336 Mass. 386, 390, 145 N.E.2d 828, 830 (Mass. 1957) (relying on caselaw that requires the defendant to have constructive notice of the defect); ***Albergo v. Deer Park Meat Farms, Inc.***, 138 A.D.2d 656, 656, 526 N.Y.S.2d 580, 581 (N.Y. Sup. Ct. 1988) (discussing the duty of the defendant to maintain its premises in a reasonably safe manner).

Ms. Wortham contends that she, as the master of her complaint, chose to proceed solely on a theory of negligent inspection, rather than premises liability. We agree with Ms. Wortham that "in civil actions the plaintiff is in control of her own case and can proceed as she sees fit." ***Smith v. Methodist Hosps. of Memphis***, 995 S.W.2d 584, 591 (Tenn. Ct. App. 1999). However, simply because the plaintiff controls its own litigation does not prevent the court from determining the true nature of the claims alleged. For example, in determining the applicable statute of limitations to an action, the Tennessee Supreme Court has held that the plaintiff's characterization of the claims in his or her complaint was not dispositive; rather, the "court must ascertain the 'gravamen of the complaint.'" ***Benz-Elliott v. Barrett Enterprises, LP***, 456 S.W.3d 140, 147 (Tenn. 2015) (quoting ***Whaley v. Perkins***, 197 S.W.3d 665, 670 (Tenn. 2006)). The gravamen of the complaint "'refers to the substantial point, the real purpose, or the object' of an action." ***Id.*** at 148 (quoting ***Redwing v. Catholic Bishop for the Diocese of Memphis***, 363 S.W.3d 436, 457 (Tenn. 2012)). In the context of determining the statute of limitations, the court is therefore directed to ignore the characterization of the claim by the plaintiff and instead consider the real purpose of the claim.

A focus on the gravamen of the complaint aligns with Tennessee's general policy not to elevate form over substance. ***Boelter v. Reagan***, No. M2010-01354-COA-R3-CV,

2011 WL 1886573, at *3 (Tenn. Ct. App. May 18, 2011) (reviewing the essence of the trial court's order because "we refuse to elevate form over substance"); *see also **Estate of Doyle v. Hunt***, 60 S.W.3d 838, 842 (Tenn. Ct. App. 2001) ("A [] court is not bound by the title of a pleading, but rather the court is to give effect to the pleading's substance and treat it according to the relief sought therein."). Even the law cited by Ms. Wortham indicates that it is the gravamen of the complaint, rather than the plaintiff's characterization, that controls the applicable law. In **Burks v. Boles**, 934 S.W.2d 653 (Tenn. Ct. App. 1996), the defendants argued that the plaintiff's claim to resolve a boundary dispute was really an ejectment action, which required additional proof. ***Id.*** at 654. Despite Ms. Wortham's insistence otherwise, this Court did not merely follow the plaintiff's characterization of the claims, but made its own independent determination as to the "gravamen of the complaint." ***Id.*** In another case cited by Ms. Wortham, we rejected not the defendant's argument that a claim involved premises liability, but the plaintiff's contention that he raised premises liability claims that had not been properly disposed of by the trial court. *See **Smith v. Benihana Nat'l Corp.***, 592 S.W.3d 864, 872 (Tenn. Ct. App. 2019), *perm. app. denied* (Tenn. Dec. 11, 2019). In making this determination, we again considered the gravamen of the complaint, including the fact that the plaintiff's complaint did not allege that he was injured by a dangerous or defective condition on the premises. ***Id.*** In contrast, even following the voluntary dismissal of what Ms. Wortham characterized as her premises liability claim, her complaint was rife with references to the injuries she suffered as a result of a dangerous condition on Kroger's property.[7]

---

[7] For example, Ms. Wortham's Third Amended Complaint contained the following allegations, even following the order of voluntary dismissal:

9. As a direct and proximate result of the aforementioned dangerous condition, [Ms.] Wortham sustained serious and severe injuries to her person, including but not limited to a nondisplaced intertrochanteric fracture of the left hip, necessitating surgical intervention and physical therapy; and left knee trauma.

* * *

13. Defendants breached their duty to the Plaintiff in each of, but not limited to, the following ways:

* * *

c. Failure of [Kroger] to inspect the shopping carts for dangerous condition in a timely manner;
d. Failure of [Kroger] to remove and/or repair the shopping carts thereby allowing a dangerous condition to exist;
e. Failure of Defendants to enact and enforce policies and procedures to maintain the shopping carts in a reasonable and safe condition;
f. Failure of Defendant Kroger to timely warn patrons, including [Ms.] Wortham, of the dangerous condition; . . . .

* * *

We tend to agree that an injury caused by a shopping cart on the premises of a grocery store has little distinction from an injury caused by wet floors or malfunctioning doors. *See, e.g., Meadow v. D & G Ltd. Assortments, Inc.*, No. M2013-01627-COA-R3-CV, 2014 WL 4536561, at \*1 (Tenn. Ct. App. Sept. 11, 2014) (applying premises liability law to a claim that a person was injured by a malfunctioning sliding glass door); *Hardesty v. Serv. Merch. Co.*, 953 S.W.2d 678, 680 (Tenn. Ct. App. 1997) (applying premises liability law to a claim that a person was injured by an intrusion into an aisle); *Benson v. H.G. Hill Stores, Inc.*, 699 S.W.2d 560, 565 (Tenn. Ct. App. 1985) (applying premises liability law to a claim that a person was injured by wax on the floor of a store); *Atkins v. City Fin. Co.*, 683 S.W.2d 331, 332 (Tenn. Ct. App. 1984) (applying premises liability law to a claim that a person was injured by a runner placed on the floor). Still, Ms. Wortham contends that, even applying premises liability law to her claim, she submitted sufficient proof of constructive notice so that this issue should not have been removed from the jury.[8] After a thorough review of the record, we agree.[9]

In our view, a discussion of the directed verdict standard, the types of evidence the jury is permitted to rely upon, and the types of inferences the jury is permitted to draw from

_____

14. [Kroger] created a dangerous condition by failing to maintain the shopping carts in a manner that threatened the health and safety of their guests, including [Ms.] Wortham.

15. In the alternative, [Kroger] knew of the dangerous condition and failed to warn [Ms.] Wortham.

16. In the alternative, [Kroger] should have discovered and corrected or adequately warned of the dangerous condition before Plaintiff was exposed to it.

In fact, the only allegation removed from the Third Amended Complaint by the order of voluntary dismissal was as follows: "Failure of [] Kroger to properly maintain the premises in a reasonable and safe condition[.]"

[8] A large portion of Ms. Wortham's argument to this effect is that the prima facie evidence of notice was supplied in this case through a presumption due to spoliation. As pointed out by Kroger, however, the trial court ultimately denied Ms. Wortham's request for a spoliation jury instruction in favor of a "missing evidence" jury instruction under the Tennessee Pattern Jury Instructions. *See* 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 2.04 (2019 ed.) (allowing the jury to conclude that evidence or a witness that was in the party's power to offer but the party failed to offer the evidence or witness would have been adverse to the party). Ms. Wortham admitted that her requested spoliation instruction had been denied in the trial court, but did not assign this denial as an error on appeal. The missing evidence rule, however, is not a substitute for proof from plaintiff as to her prima facie case. *See Runnells v. Rogers*, 596 S.W.2d 87, 90 (Tenn. 1980) (holding that the missing evidence rule only applies "when the plaintiff's proof and the legal deduction therefrom make a prima facie case against the defendant"). Because of our resolution of this appeal, particularly that Ms. Wortham presented sufficient proof regardless of any presumption in her favor, we need not belabor this issue.

[9] Kroger does not contend that the voluntary dismissal of Ms. Wortham's premises liability claim should result in the automatic reversal of her award in the event that we conclude her action indeed contemplates premises liability. As such, even if we were to hold that this claim involves premises liability, it would not be the end of our inquiry.

- 13 -

the evidence is necessary to our analysis. As previously discussed, the trial judge should not grant a directed verdict and remove an issue from the jury's purview, unless the evidence, along with all reasonable inferences, would not allow a reasonable juror to rule in the plaintiff's favor. *See **Whitaker v. Harmon***, 879 S.W.2d 865, 867 (Tenn. Ct. App. 1994). The jury is permitted to rely on both direct and circumstantial evidence with equal force. ***City of Columbia v. C.F.W. Const. Co.***, 557 S.W.2d 734, 740 (Tenn. 1977) (quoting ***Scott v. Atkins***, 44 Tenn. App. 353, 314 S.W.2d 52 (Tenn. Ct. App. 1957)) ("Of course, '(a)ny fact may be proved by direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence.'"). Direct evidence is defined as "evidence that 'proves a fact, or group of facts, without an inference, and which in itself, if true, conclusively establishes that fact.'" ***Brenner v. Textron Aerostructures***, 874 S.W.2d 579, 585 (Tenn. Ct. App.1993) (quoting ***Otis v. Cambridge Mut. Fire Ins. Co.***, 850 S.W.2d 439, 445 (Tenn. 1992)). In contrast, circumstantial evidence refers to evidence which "'proves a fact from which an inference of the existence of another fact may be drawn.'" ***Id.*** (quoting ***Otis***, 850 S.W.2d at 445). In other words,

> Circumstantial evidence is indirect evidence that gives [the fact-finder] clues about what happened. Circumstantial evidence is proof of a fact, or a group of facts, that causes you to conclude that another fact exists. It is for [the jury] to decide whether a fact has been proved by circumstantial evidence. If [the jury] base[s] [its] decision upon circumstantial evidence, [it] must be convinced that the conclusion [it] reach[es] is more probable than any other explanation.

8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 2.02 (2019 ed.). When the plaintiff relies on circumstantial evidence to defeat a motion for directed verdict, the relevant inquiry is whether reasonable minds might differ as to whether the evidence supports inconsistent theories or "conflicting probabilities". ***Phillips v. Newport***, 28 Tenn. App. 187, 202, 187 S.W.2d 965, 971 (Tenn. Ct. 1945). If reasonable minds could differ on this question, a directed verdict is improper. ***Browder v. Pettigrew***, 541 S.W.2d 402, 405 (Tenn. 1976).

The jury is also permitted to draw inferences from the evidence submitted to support its finding. ***Benton v. Snyder***, 825 S.W.2d 409, 414 (Tenn. 1992). Traditionally, however, the jury was not permitted to draw inferences upon inferences. ***Id.*** Still, the prohibition is somewhat nuanced, as explained by our supreme court:

> Although a jury can permissibly draw an inference from the evidence before it, whether direct or circumstantial, it is well settled in Tennessee that an inference cannot be properly drawn from another inference. ***Edenton v. McKelvey***, 186 Tenn. (22 Beeler) 655, 660, 212 S.W.2d 616, 618 (1948); ***Pusser v. Gordon***, 684 S.W.2d 639, 649 (Tenn.App.1984). What is meant by this rule is that "[a]n inference can be drawn only from the facts in evidence, and cannot be based on surmise, speculation, conjecture, or guess; it must be

- 14 -

reasonably drawn from, and supported by, the facts on which it purports to rest, and must be made in accordance with correct and common modes of reasoning." ***Patton v. L.O. Brayton & Co.***, 184 Tenn. (20 Beeler) 592, 598, 201 S.W.2d 981, 984 (1947) (quoting 32 C.J.S. *Evidence* § 1044, 1942). It should be noted that the rule has been roundly criticized by legal scholars and, as a result, some states have abandoned the rule, while in others qualifications and exceptions have developed.

* * *

Tennessee has qualified the general rule by adopting a rule that a fact may be inferred from circumstantial evidence, and from the fact thus inferred, another fact may be inferred without contravening the rule that an inference cannot be based upon an inference. ***Stinson v. Daniel***, 220 Tenn. (24 McCanless) 70, 80, 414 S.W.2d 7, 11 (1967); ***Tennessee Valley Electric Co-op v. Harmon***, 39 Tenn.App. 580, 590, 286 S.W.2d 593, 597 (1956). What is meant by this rule is that "a 'fact,' although arrived at by indirect or circumstantial evidence, may serve as a basis for an inference; that is the evidence supporting the first inference may be of such a character and so strong that it justifies a conclusion or a finding of fact which becomes a proper basis for another inference." Annotation, supra, 95 A.L.R. 162 (citing ***Nashville Gas & Heating Co. v. Phillips***, 17 Tenn.App. 648, 69 S.W.2d 914 (1934), and ***Adamant Stone & Roofing Co. v. Vaughn***, 7 Tenn.App. 170 (1928)).

***Benton***, 825 S.W.2d at 414–15; *see also* ***Rothstein v. Orange Grove Ctr., Inc.***, 60 S.W.3d 807, 812 (Tenn. 2001) (citing ***Benton***).

This Court has previously considered the question of inferences in the context of a premises liability action. *See* ***Robbins v. Memphis Little Theatre Players***, No. 02A01-9601-CV-00018, 1997 WL 585743 (Tenn. Ct. App. Sept. 23, 1997). In ***Robbins***, the plaintiff alleged that she slipped on a program that was either left on a theater's stairs by an usher or "should have been seen on the steps by the usher prior to the fall." ***Id.*** at *4. The trial court granted a directed verdict to the defendant theater and the plaintiff appealed.

On appeal, the plaintiff argued that the trial court erred in granting the directed verdict because sufficient evidence was presented from which the jury could infer that the theater's negligence caused her injuries and that the theater had actual or constructive notice of the dangerous condition on its property. As the court explained,

In this case, the evidence was that [the plaintiff] slipped because she stepped on something "slick," that the paper on which the theater programs were printed had a "slick" surface, and that a crumpled program was found near

- 15 -

[the plaintiff] after she fell. [The plaintiff] argue[s] that a jury could permissibly infer from this evidence that the crumpled theater program caused [the plaintiff's] fall. The Theatre argues that the proof that the crumpled theater program was the cause of [the plaintiff's] fall is too speculative, where no one saw the program on the steps prior to [the plaintiff's] fall, the program was not introduced into evidence, and no one knew what happened to it.

*Id.* at \*3.

We, however, rejected the plaintiff's argument, concluding that the inferences necessary to find in her favor were too speculative to support a verdict in her favor. While the court held that there was sufficient evidence for the jury to conclude that the crumpled program caused the plaintiff's fall, it ultimately concluded that "the inference that the program caused [the plaintiff] to slip and fall is too weak to support a second inference" that the program was dropped by an usher or should have been seen by one. *Id.* at \*3–4. Specifically, we held that

it is not evident that, if the program did not cause the slip, the slip must have been caused by some other condition for which the [theater] was responsible. Moreover, there was no evidence of how long the crumpled program had been on the floor and whether or not the [theater] should have known of it.

*Id.* at \*5.

Turning to the evidence presented in this case, we conclude that sufficient circumstantial evidence was presented from which a reasonable juror could infer both negligence by Kroger that led to Ms. Wortham's injuries and that Kroger should have been on notice of a dangerous condition on its property that resulted in Ms. Wortham's injuries. First, unlike in *Robbins*, there can be little dispute in this case that Ms. Wortham's fall was the result of a wobbly, three-wheeled shopping cart that was in Kroger's control. Thus, the facts of this case quickly depart from those in *Robbins*, where the plaintiff struggled to even show what caused her to slip at the theater. *See id.* at \*4.

Moreover, the jury was presented with sufficient proof to find that it was foreseeable that a wobbly or three-wheeled cart could cause an injury to a customer; indeed, Kroger's own employees testified to the policy of removing such carts from circulation. *See generally **Satterfield v. Breeding Insulation Co.***, 266 S.W.3d 347, 363 (Tenn. 2008) ("Tennessee law currently provides that one owes a duty to refrain from engaging in conduct that creates an unreasonable and foreseeable risk of harm to others."). And applying the law of premises liability, as Kroger insists we must, property owners owe a "general duty of due care" to either remove or warn against "any dangerous condition on the premises of which the property owner is actually aware or should be aware through the

exercise of reasonable diligence." ***Parker v. Holiday Hosp. Franchising, Inc.***, 446 S.W.3d 341, 350 (Tenn. 2014) (citing ***Eaton v. McLain***, 891 S.W.2d 587, 594 (Tenn. 1994)). Thus, the evidence permits more than one conclusion as to whether Kroger owed a duty to Ms. Wortham, and a directed verdict was properly denied at to this element. *See **Bradshaw***, 854 S.W.2d at 869; *see also **Moorhead v. J. C. Penney Co.***, 555 S.W.2d 713, 718 (Tenn. 1977) (noting that "variable" standards such as negligence are "based upon the common sense of the community" and therefore within the province of the jury).

The crux of this case therefore involves whether Kroger breached the standard of care, whether that breach was the actual and proximate cause of Ms. Wortham's injuries, and if the premises liability requirements are applicable, if Kroger had actual or constructive notice of the defective cart. In our view, these issues are highly interrelated. Here, much of Ms. Wortham's case rests on her assertion that the cart used by Ms. Wortham was missing a wheel at the time that it was removed from Kroger's lobby and used for shopping. Of course, there is no direct evidence of this alleged fact. Instead, Ms. Wortham relies on the undisputed fact that despite a thorough inspection of Kroger's property following the injury, the wheel and its casing were never located. Even Kroger puts little effort into asserting an alternative theory of how the shopping cart came to only have three wheels while the fourth wheel was never recovered. Thus, while the evidence that the wheel was missing at the time that the cart was first used is "arrived at" only by indirect proof, the evidence supporting this finding is "of such a character and so strong that it justifies a conclusion or a finding of fact which becomes a proper basis for another inference." ***Benton***, 825 S.W.2d at 415. Unlike in ***Robbins***, the jury was therefore entitled to make additional inferences based upon this fact. *See **Robbins***, 1997 WL 585743, at *4.

From this fact, we cannot conclude that no reasonable jury could infer that the missing wheel was the result of Kroger's negligence. Throughout this case, Kroger has maintained that its baggers, or "courtesy clerks," inspect the carts each and every time that they are brought from the parking lot to be corralled in the lobby or vestibule. Although no written policy required daily inspections of each and every cart, Kroger submitted evidence that courtesy clerks are required to look at the shopping carts each time that they bring the carts back from the parking lot. If a cart with a missing wheel was found during this routine inspection, Kroger admitted that the proper procedure was to remove the cart from use. As noted above, however, strong circumstantial evidence establishes that the wheel was missing from Ms. Wortham's cart when it was removed from Kroger's lobby. ***Benton***, 825 S.W.2d at 415. From this fact, a reasonable jury could "surmise" that Kroger employees negligently allowed a cart with a missing wheel to remain in circulation. *Accord **Burns v. Schnuck Markets, Inc.***, 719 S.W.2d 499 (Mo. Ct. App. 1986) (holding that a jury could infer from the facts that grocery store negligently overlooked a missing wheel from a shopping cart) (discussed in detail, *infra*). In other words, if Kroger employees had acted with due care in performing the regular inspections required by Kroger's unwritten policy, a three-wheeled cart would not have slipped past their inspections to be placed in the lobby for use by a customer. It was therefore reasonable to infer that because the three-wheeled

cart was placed in the lobby for use, Kroger failed to act with due care. Thus, we cannot conclude that, viewing the evidence and reasonable inferences "most favorably" to Ms. Wortham, she failed to present evidence from which a reasonable mind could find a breach of the duty of care by Kroger. ***Richardson***, 44 S.W.3d at 30.

Having established both a duty to Ms. Wortham and Kroger's breach of that duty, we turn to causation. As the Tennessee Supreme Court has explained:

> Cause in fact refers to the cause and effect relationship between the defendant's tortious conduct and the plaintiff's injury or loss. Thus, cause in fact deals with the "but for" consequences of an act. The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct. In contrast, proximate cause, or legal cause, concerns a determination of whether legal liability should be imposed where cause in fact has been established. Proximate or legal cause is a policy decision made by the legislature or the courts to deny liability for otherwise actionable conduct based on considerations of logic, common sense, policy, precedent and "our more or less inadequately expressed ideas of what justice demands or of what is administratively possible and convenient."

***Snyder v. LTG Lufttechnische GmbH***, 955 S.W.2d 252, 256 n.6 (Tenn.1997) (citations omitted). Here, because the jury was permitted to infer that it was Kroger's negligence that led to a three-wheeled cart being left in circulation, we have little difficulty finding sufficient evidence to prevent a directed verdict on the element of causation. Specifically, given Kroger's admission that a three-wheeled cart should have been removed from circulation and the near-certain fact that the wobbly cart caused Ms. Wortham to fall, it was not unreasonable for the jury to find that Kroger's failure to remove a cart that was missing a wheel at the time it was placed in the lobby was a breach of the standard of care that was both the cause in fact and proximate cause of Ms. Wortham's injuries. Kroger was therefore not entitled to a directed verdict as to this element of negligence.

Finally, we conclude that a reasonable jury could also infer that Kroger should have known about the defective condition on its property. Kroger's insistence that it has a policy to remove damaged and defective carts despite no written policy being in place actually undercuts its argument that Ms. Wortham failed to show constructive notice here. A similar policy was sufficient to create a jury question as to the issue of notice in a case from a sister jurisdiction. Specifically, in ***Burns v. Schnuck Markets, Inc.***, the grocery store similarly argued that the plaintiff failed to meet her burden to present some evidence from which a reasonable jury could find notice. 719 S.W.2d at 500. The Missouri Court of Appeals, however, rejected this argument:

> [The grocery store's] argument that they had no notice of the defective cart is not convincing. [The plaintiff] removed the cart from a bin in which

- 18 -

[the grocery store] employees place empty carts. She entered the store, "got me a cart, pulled it out, [of storage bin]." As she started pushing the cart "the wheel was wobbling." [The grocery store] furnished shopping carts and assumed the duty to furnish a safe cart. The evidence supports an inference that [the grocery store's] employees placed the cart in the storage area and had constructive knowledge of the defect which existed when Burns selected the cart from that area. In addition, the testimony of [the grocery store's] employees outlined the procedures taken to identify defective carts. However, it was also admitted the precautionary measures were not always followed when the store was crowded. From this evidence the jury could have reasonably surmised that the defective cart was negligently overlooked in the inspection procedure.

*Id.* at 500–01.

Similar, though not identical, facts were presented in this case. Given the routine inspections taking place each and every time that a cart is placed in the lobby by a Kroger employee, the fact that a cart was allowed to remain in circulation despite a missing wheel "supports an inference[,]" as in *Burns*, that Kroger employees should have been aware of the defective cart at the time that it was taken to be used by Ms. Wortham. *Id.* In other words, because strong circumstantial evidence indicates that the cart was returned to the lobby by Kroger employees without all of its wheels, the jury could conclude that the wheel was missing "for a sufficient length of time" that Kroger and its employees, "by exercising due care, should have discovered the dangerous condition." *Simmons*, 713 S.W.2d at 641–42. As such, we cannot conclude that the trial court erred in finding that the evidence, along with all reasonable inferences in its favor, could support a finding that Ms. Wortham's fall was caused by Kroger's negligence in failing to properly inspect its shopping carts and that Kroger's inspection procedures should have placed Kroger on notice of the defective cart prior to Ms. Wortham's injuries. The trial court's decision to deny the motion for a directed verdict is therefore affirmed.[10]

## II.     Peggs

Kroger next raises two issues related to the trial court's treatment of Peggs, the

---

[10] Within this section of Kroger's brief, Kroger includes a separate argument asserting that the trial court erred in its failure to instruct the jury related to premises liability. Kroger's stated issues, however, do not raise improper jury instructions as an error on appeal in any fashion. "[I]ssues that are not properly designated are generally waived even when argued in the body of the brief." *Augustin v. Bradley Cty. Sheriff's Office*, 598 S.W.3d 220, 226 (Tenn. Ct. App. 2019), *perm. app. denied* (Tenn. Feb. 19, 2020) (citing *Childress v. Union Realty Co.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002) ("We consider an issue waived where it is argued in the brief but not designated as an issue.")); *Forbess v. Forbess*, 370 S.W.3d 347, 356 (Tenn. Ct. App. 2011) ("We may consider an issue waived where it is argued in the brief but not designated as an issue."). Here, Kroger neglected to designate any error concerning the jury instructions as an issue on appeal. As such, any issue related to the jury instructions is waived.

company that was under a contractual duty to service Kroger's shopping carts. First, Kroger contends that the trial court abused its discretion in preventing it from presenting evidence of Peggs' duty to inspect and maintain the carts during trial. Second, Kroger contends that the trial court erred in granting summary judgment to Peggs, resulting in the jury being unable to allocate fault to Peggs or for Kroger to assert comparative fault against Peggs.

We begin with Kroger's evidentiary argument. Trial courts have broad discretion over what evidence is admitted or excluded from trial. *Castelli v. Lien*, 910 S.W.2d 420, 425 (Tenn. Ct. App. 1995). We therefore review the trial court's decision to admit or exclude evidence for an abuse of that discretion. *Biscan v. Brown*, 160 S.W.3d 462, 468 (Tenn. 2005). "In determining whether the trial court abused its discretion, an appellate court 'should presume that the [trial court's] decision is correct and should review the evidence in the light most favorable to the decision.'" *Mayfield v. Mayfield*, 395 S.W.3d 108, 115 (Tenn. 2012) (quoting *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105–06 (Tenn. 2011)). "Discretionary decisions, however, require a conscientious judgment, consistent with the facts, that takes into account the applicable law." *White v. Beeks*, 469 S.W.3d 517, 527 (Tenn. 2015), *as revised on denial of reh'g* (Aug. 26, 2015) (citing *Lee Med. Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)).

In order to obtain relief regarding the exclusion of evidence, the proponent of the evidence must not only show that the evidence was wrongly excluded, but also that "when considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." *In re Estate of Smallman*, 398 S.W.3d 134, 152 (Tenn. 2013) (quoting *State v. Gomez*, 367 S.W.3d 237, 249 (Tenn. 2012)) (internal quotation marks omitted); *see also* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."). In a jury case, we must carefully examine the entire record to determine "whether [exclusion] of the evidence, more probably than not, influenced the jury's verdict." *Smallman*, 398 S.W.3d at 152 ("[W]hether [the evidentiary error] is sufficiently prejudicial to require reversal depends on the substance of the evidence, its relation to the other evidence, and the peculiar facts and circumstances of the case."). We do not act as a second jury by combining our harmlessness inquiry with our own assessment of liability. *State v. Rodriguez*, 254 S.W.3d 361, 373–74 (Tenn. 2008). Rather, the goal is to identify the actual basis for the jury's decision, *State v. Mallard*, 40 S.W.3d 473, 489 (Tenn. 2001) (quoting *Momon v. State*, 18 S.W.3d 152, 168 (Tenn. 1999)), and to determine whether the exclusion of evidence, more probably than not, affected the verdict. *Smallman*, 398 S.W.3d at 152.

Kroger contends that the trial court erred in excluding evidence of its contract with Peggs. Regardless of whether this evidence was improperly excluded, however, we cannot conclude that the evidence's exclusion was prejudicial to Kroger. Here, testimony was

presented that Kroger entered into a contract with Peggs to inspect and maintain the shopping carts, that it was generally Peggs' responsibility to repair the shopping carts, and that a Peggs employee was in the store less than two weeks prior to Ms. Wortham's accident for this very purpose.[11] The only evidence that Kroger contends was wrongly excluded, it appears, was the contract itself between Peggs and Kroger.

Kroger's brief offers little argument as to how the exclusion of the contract affected the outcome at trial, other than a single conclusory statement: "This was error and drastically affected the outcome of the trial." In its reply brief, Kroger appears to attempt correction of this error by asserting that "[e]vidence of Peggs['s] contractual obligations were critical for a jury's assessment of fault in this case especially given the fact that [Ms. Wortham] constantly kept misrepresenting to the jury that Kroger did not have a written policy in place to inspect shopping carts when in fact it did with Peggs." Respectfully, we do not consider arguments that are only minimally developed in a party's appellate brief. *See Sneed v. Bd. of Prof'l Responsibility of Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived."). And deficient briefing may not be corrected by reply brief.[12] *See Augustin v. Bradley Cty. Sheriff's Office*, 598 S.W.3d 220, 227 (Tenn. Ct. App. 2019), *perm. app. denied* (Tenn. Feb. 19, 2020) ("Reply briefs, however, are generally not a vehicle to correct deficiencies

---

[11] Specifically, Mr. Sargent testified as follows:

Q. I believe I asked you whether Kroger repairs its own carts, the ones that are out of service, and you mentioned that Kroger personnel do not; is that correct?
A. Yes, sir.
Q. Okay. Who does those repairs, if repairs are necessary for carts that are out of service?
A. The Peggs Company.
Q. All right. Peggs Company, who is that?
A. The Peggs Company is the third party vendor that Kroger has contracted with --
Q. Okay.
A. -- for that store.
Q. Are they hired also to inspect all carts?
A. Yes, sir.
Q. Did they inspect the carts at this store?
A. Yes, sir.
Q. Do you know when, approximately, they inspected the carts at this store before Ms. Wortham's incident?
A. Ms. Wortham's accident was on August 25th, I believe. And they came approximately 12, 13 days before that.

[12] Kroger's employees admitted Kroger did not have a written policy for the inspection of carts *by its own employees*. And again, testimony was presented that Kroger "contracted with" Peggs for inspection and maintenance services, discussed *supra*. As such, there was no error requiring correction through admission of the contract.

- 21 -

in initial briefs."). Showing prejudice, however, is a necessary element of obtaining relief due to the exclusion of evidence. *See Smallman*, 398 S.W.3d at 152. And in neither of Kroger's filings to this Court does it indicate why the jury's verdict would be undermined when the jury heard evidence of Kroger's contractual relationship with Peggs and Peggs' duty to inspect and maintain the shopping carts, but was not presented with the written contract formalizing that duty. Under these circumstances, we cannot conclude that Kroger has met its burden to show a reversible error as to the exclusion of the contract.

Kroger next contends that the trial court erred in granting Peggs' motion for summary judgment. In support, Kroger maintains two, rather opposed, arguments: (1) that the motion should not have been entertained because it was moot; and (2) that sufficient evidence was presented, at the summary judgment stage, to make Peggs' liability an issue for the jury.

We begin with Kroger's mootness argument, which implicates questions of justiciability. As we have previously explained:

> The doctrine of justiciability prompts courts to stay their hand in cases that do not involve a genuine and existing controversy requiring the present adjudication of present rights. Thus, our courts will not render advisory opinions, or decide abstract legal questions.
> Cases must be justiciable not only when they are first filed but must also remain justiciable throughout the entire course of the litigation, including the appeal. The concept of mootness deals with the circumstances that render a case no longer justiciable.
> A moot case is one that has lost its character as a present, live controversy. The central question in a mootness inquiry is whether changes in the circumstances existing at the beginning of the litigation have forestalled the need for meaningful relief. A case will generally be considered moot if it no longer serves as a means to provide relief to the prevailing party.

*McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994) (citations omitted). Questions regarding mootness are issues of law, which are generally subject to a de novo standard of review on appeal. *See Melton v. City of Lakeland*, No. W2018-01237-COA-R3-CV, 2019 WL 2375431, at *2 (Tenn. Ct. App. June 5, 2019) (citing *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996)); *State ex rel. DeSelm v. Jordan*, 296 S.W.3d 530, 533 (Tenn. Ct. App. 2008). Generally, the party asserting mootness has the burden of showing that the case lost its controversial character. *Hudson v. Hudson*, 328 S.W.3d 863, 865 (Tenn. 2010).

Kroger contends that Peggs' settlement with Ms. Wortham rendered its motion for summary judgment moot. Kroger's explanation of the result of this alleged mootness

reveals the near absurdity of its argument. According to Kroger, because Peggs' motion was moot, its motion for summary judgment should have been denied, leaving it as a party to whom Kroger could shift the blame for Ms. Wortham's injuries. Regardless of whether Peggs entered into a settlement with Ms. Wortham, Peggs certainly had an ongoing interest in resisting Kroger's insinuations against it. Indeed, if its motion had not been granted, Peggs would have been required to expend additional resources appearing and defending itself at trial. While Peggs may not have been subject to additional money damages to Ms. Wortham as a result of substantiated allegations of negligence against it,[13] findings of negligence by Peggs could result in damage beyond the payment of a monetary award to Ms. Wortham. Moreover, Kroger still had claims pending against Peggs related to this action, albeit claims that had been ostensibly "severed" from Ms. Wortham's primary action.[14] And even though Kroger's indemnification claim had been dismissed via summary judgment, the trial court did not designate that order as final and appealable. Thus, the trial court was at liberty to reconsider that ruling at any time. *See* Tenn. R. Civ. P. 54.02 ("In the absence of [an express] determination and direction [of finality], any order or other form of decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties."); ***Wall v. Wall***, No. W2010-01069-COA-R3-CV, 2011 WL 2732269, at *22 (Tenn. Ct. App. July 14, 2011) (holding that an interlocutory order "may be modified at any time before a final order is entered"). Whether Peggs committed negligence that resulted in Ms. Wortham's injuries therefore appears to have remained in controversy at the time that the trial court granted summary judgment.

Although Kroger cites considerable legal authority concerning the general rules of mootness, it has cited no case involving analogous facts that support its argument. Indeed, the one case cited by Kroger for its facts involved a claim to stop a construction project that was rendered moot when the construction of the project was completed. *See **Alliance for Native Am. Indian Rights in Tennessee, Inc. v. Nicely***, 182 S.W.3d 333, 336 (Tenn. Ct. App. 2005). Kroger has therefore cited no law to support its argument that the alleged settlement of a third-party defendant and plaintiff renders the third-party defendant's motion for summary judgment moot when the original defendant wishes to assert fault against the third-party defendant and has additional claims pending against that party. Indeed, Kroger admits elsewhere in its brief that settlement alone does not preclude a party from asserting fault against a third-party. Specifically, in arguing that summary judgment to Peggs was inappropriate, Kroger states the following: "Where a defendant has properly pleaded and introduced an appropriate quantum of evidence of the fault of another that reached a settlement with the plaintiff, it is appropriate to include the settling person or

---

[13] The fact that Peggs could not be further liable to Ms. Wortham for additional damages is merely assumed, as the terms of the settlement between Peggs and Ms. Wortham was not disclosed.

[14] See *supra*, footnote 2 for a discussion of whether these claims were even properly severed from Ms. Wortham's underlying negligence action.

entity on the jury verdict form and allow the jury to apportion fault to that person or entity." Essentially, Kroger wants the benefit of allowing it to divert fault for Ms. Wortham's injuries without the burden of having Peggs defend against that effort. Here, Peggs had an interest in defending against Kroger's efforts to assign it fault, notwithstanding the fact that Peggs settled with Ms. Wortham under completely undisclosed terms. Under these circumstances, we cannot conclude that Kroger met its burden to show that Peggs' motion was moot.

Kroger also asserts that summary judgment was inappropriate because there were material disputes of fact concerning Peggs' liability for Ms. Wortham's injuries. Summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. "[W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). The trial court's decision to grant or deny a motion for summary judgment is reviewed de novo, with no presumption of correctness. *Id.* at 250 (citing *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010)). We therefore "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.*

Peggs filed its motion for summary judgment asserting that Ms. Wortham could not show that any breach of duty by Peggs resulted in the injuries to Ms. Wortham. As previously discussed, breach of duty and causation are necessary elements of both ordinary negligence and premises liability theories. Peggs filed two motions for summary judgment, one directed at Ms. Wortham's claims and one directed at Kroger's cross-claims. In any event, Kroger was given notice of both Peggs' motions and responded in opposition. *See generally* Tenn. R. Civ. P. 56.03 (allowing "any party" to oppose a motion for summary judgment). As Kroger argued above, a third-party may be included in the jury verdict form notwithstanding its settlement with the plaintiff when there has been introduced "an appropriate quantum of evidence of the fault of" the third-party. *See generally Lake v. Memphis Landsmen, LLC*, No. W2011-00660-COA-RM-CV, 2014 WL 895519, at *6 (Tenn. Ct. App. Mar. 7, 2014), *perm. app. denied* (Tenn. Sept. 18, 2014) (holding that it was not error to include a defendant on the jury verdict form that had settled with the plaintiff when there was evidence that the defendant's negligence could have been the proximate cause of the plaintiff's injuries). Indeed, even Peggs admits that "[t]here appears to be no dispute that a settling defendant can remain on the jury verdict form *if* there is evidence sufficient to create a triable issue of fact as to its fault." *See* 17 Tenn. Prac. *Tennessee Law of Comparative Fault* § 12:9 (2018 ed.) ("[A] defendant who has asserted or wants to preserve the opportunity to assert the fault of a co-defendant who has moved

for summary judgment, should" respond in opposition to the motion for summary judgment by pointing to specific evidence that creates a question of fact for the jury.). The question in this case is therefore whether sufficient proof was presented to create a jury question on this issue.

Generally, negligence cases are not amenable to summary judgement. *Keene v. Cracker Barrel Old Country Store, Inc.*, 853 S.W.2d 501, 502 (Tenn. Ct. App. 1992). Summary judgment can only be granted when "all of the facts together with the inferences to be drawn from the facts . . . are so certain and uncontroverted that reasonable minds must agree." *Id.* The question of speculation and inferences is also apt in the summary judgment context: "While a jury is not permitted to speculate regarding two equally probable inferences, a plaintiff, to bring his case before the jury, need not produce evidence that excludes every other reasonable conclusion." *Robbins*, 1997 WL 585743, at *3 (citing *Benson v. H.G. Hill Stores, Inc.*, 699 S.W.2d 560, 563 (Tenn. Ct. App. 1985)). "The plaintiff need only present proof which, if found credible, makes the plaintiff's theory more probable than that of the defendant." *Id.* In other words, negligence cases may be resolved at the summary judgment stage "if the evidence is uncontroverted and if the facts and the inferences drawn reasonably from the facts permit reasonable persons to draw only one conclusion." *Rains v. Bend of the River*, 124 S.W.3d 580, 588 (Tenn. Ct. App. 2003) (citing *White v. Lawrence*, 975 S.W.2d 525, 529–30 (Tenn. 1998)).

Importantly, Kroger did not dispute many of the facts that Peggs relied upon in its motion for summary judgment. First, Kroger did not dispute that the cart was missing a wheel when it tipped over and that there was no evidence as to when the wheel separated from the cart. Second, Kroger did not dispute that there was no evidence as to the condition of the cart when Peggs' arrived. Kroger also did not dispute that there was no evidence of what occurred in between Peggs' visit to the store and Ms. Wortham's fall. Finally, Kroger did not dispute that there was no evidence that the subject shopping cart was even present at the Kroger location on the days that Peggs performed work there. Kroger did dispute, however, facts concerning the work performed by Peggs' technician and the condition of the cart when the technician completed his work. According to Kroger, if the technician had done his job correctly "there would not have been a missing wheel."

Respectfully, we cannot conclude that the undisputed facts actually support this inference. Regardless of Kroger's attempt to create factual disputes, "not all factual disputes will prevent the granting of summary judgment." *Walker v. First State Bank*, 849 S.W.2d 337, 340 (Tenn. Ct. App. 1992). Rather, "the disputed facts must bear directly and materially upon the legal elements of the claim or defense being tested by the summary judgment motion." *Id.* (citing *Macon County Livestock Market, Inc. v. Kentucky State Bank*, 724 S.W.2d 343, 348 (Tenn. Ct. App. 1986)). In addition, lack of evidence may be an appropriate basis for summary judgment. As the Tennessee Supreme Court explained, one method for the moving party who does not bear the burden of proof at trial to obtain summary judgment is to "[d]emonstrate[e] that the nonmoving party's evidence at the

summary judgment stage is insufficient to establish the nonmoving party's claim or defense." ***Rye v. Women's Care Ctr. of Memphis, MPLLC***, 477 S.W.3d 235, 264 (Tenn. 2015). And there can be no dispute that like Ms. Wortham's allegations of fault against Peggs, Kroger had the burden to prove its comparative fault affirmative defense by establishing Peggs' negligence. *See **Ellington v. Jackson Bowling & Family Fun Ctr., L.L.C.***, No. W2012-00272-COA-R3-CV, 2013 WL 614502, at \*10 (Tenn. Ct. App. Feb. 19, 2013) (quoting ***Banks v. Elks Club Pride of Tenn. 1102***, 301 S.W.3d 214, 220 (Tenn. 2010)) ("Under the system of comparative fault in Tennessee, comparative fault is an affirmative defense in which an alleged tortfeasor asserts 'that a portion of the fault for the plaintiff's damages should be allocated to another tortfeasor.'"). Thus, Peggs could satisfy its burden of production by demonstrating that Kroger's evidence was insufficient to establish its claim.

Here, the facts that are undisputed show a significant gap between Ms. Wortham's injuries and Peggs' work. In particular, Kroger admits that there is no evidence as to the condition of the shopping cart when Peggs first inspected it. Moreover, Kroger cannot even establish that the subject shopping cart was present for Peggs to inspect. To assign the blame for the missing wheel on Peggs, a jury would have to find, without specific evidence in support: (1) that the shopping cart was present on the day of the inspection; (2) that the shopping cart was defective on the day of the inspection such that Peggs should have been alerted to its condition; and (3) that Peggs' negligently failed to remedy the defective cart either by repairing it or removing the cart from circulation. Working backwards, while reasonable persons could certainly conclude that Peggs acted negligently if it was presented with the defective shopping cart and either failed to notice its condition or failed to properly repair the cart, we cannot say the same for the initial inference that Peggs was presented with the shopping cart, much less in a defective condition. For the jury to conclude that Peggs was both presented with the shopping cart and that it was defective twelve to thirteen days prior to Ms. Wortham's injuries would, respectfully, result from nothing more than speculation. As previously discussed, however, an "inference can be drawn only from the facts and evidence and cannot be based on surmise, speculation, conjecture or guess[.]" ***Thompson v. Ruby Tuesday, Inc.***, No. M2004-01869-COA-R3-CV, 2006 WL 468724, at \*9 (Tenn. Ct. App. Feb. 27, 2006) (citing ***Benton***, 825 S.W.2d at 414–15). And a weak inference cannot support further inferences therefrom. *See **Benton***, 825 S.W.2d at 414–15; ***Robbins***, 1997 WL 585743, at \*4.

Thus, while Kroger's ongoing inspections of the carts in close temporal proximity to Ms. Wortham's accident allow a reasonable series of inferences from which a jury could find Kroger liable for Ms. Wortham's injuries, the large gap in both the time between Peggs' work and Ms. Wortham's injuries and in the evidence presented do not permit such an inference against Peggs. And as Kroger points out in its own brief, the occurrence of an accident or injury does not establish that negligence was committed. *See **Nashville, C. & St. L. Ry. v. Sutton***, 21 Tenn. App. 31, 104 S.W.2d 834, 843 (1936) (citation omitted) ("The act which caused the injury and the negligence of defendant in relation to the act"

- 26 -

cannot 'be inferred from the accident itself.'").

Finally, we must point out the deficiencies in Kroger's efforts to resist Peggs' motions for summary judgment. Specifically, Kroger's attempt to demonstrate genuine disputes of material facts falls short. For example, with regard to Peggs' alleged undisputed fact that there is no evidence concerning its technician's work on the day in question, Kroger argues as follows: "There has been no proof as to the exact actions that [the technician] did or did not take on August 12, 2016 during his inspection, service, and maintenance of Kroger's carts. As such, the condition of the subject cart at that time is a question of fact in itself." Of course, once Peggs met its burden of production by showing Kroger's lack of evidence, Kroger was required to do more than create "metaphysical doubt" surrounding the facts. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). It was required to point to specific facts establishing a genuine dispute of material fact. *Id.* Here, Peggs did not have the burden of proving that it was not negligent; instead, Kroger bore that burden. Thus, Peggs was able to shift the burden by pointing to Kroger's lack of evidence; Kroger cannot, however, meet its burden by employing the same tactic.

Based on the foregoing, the undisputed facts presented at the summary judgment stage permit only one reasonable conclusion: that Kroger failed to present sufficient proof to submit Peggs' negligence to the jury. Consequently, the trial court did not err in granting summary judgment to Peggs. *See Thompson*, 2006 WL 468724, at *9 (quoting *Hampton v. Wal-Mart Stores, Inc.*, No. E2004-00401-COA-R3-CV, 2004 WL 2492283, at *3 (Tenn. Ct. App. Nov. 5, 2004)) (affirming summary judgment where "a jury considering th[e] evidence could do no more than guess, conjecture or speculate"). Because summary judgment was properly granted, there was no error in the trial court's decision to remove Peggs from the jury verdict form.

## III. Expert Testimony

Kroger next contends that the trial court erred in not excluding the testimony of Dr. Laux because her testimony did not substantially assist the trier of fact. "[Q]uestions regarding the admissibility, qualifications, relevancy and competency of expert testimony are left to the discretion of the trial court." *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263 (Tenn. 1997) (citing *State v. Ballard*, 855 S.W.2d 557, 562 (Tenn. 1993)). The trial court's decision to admit or exclude an expert is therefore reviewed for an abuse of discretion. *Holder v. Westgate Resorts Ltd.*, 356 S.W.3d 373, 376 (Tenn. 2011). A trial court abuses its discretion when it applies an incorrect legal standard, or reaches a decision which is against logic or reasoning or that causes an injustice to the party complaining. *State v. Harbison*, 539 S.W.3d 149, 159 (Tenn. 2018) (quoting *State v. Dotson*, 254 S.W.3d 378, 390 (Tenn. 2008)). We therefore are not permitted to substitute our judgment for the trial court, but must uphold the trial court's decision so long as reasonable minds can disagree as to its propriety. *Id.* (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn.

2001); *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000)). Of course, the abuse of discretion standard does not excuse the trial court from applying all applicable law to the dispute. *See Hogue v. Hogue*, 147 S.W.3d 245, 251 (Tenn. Ct. App. 2004) (noting that a discretionary decision "is not unbounded, [but] must be based on proof and appropriate legal principles"). And again, when the admission of evidence is at issue, the party seeking its exclusion must show that the erroneous admission of the evidence affected the jury's verdict. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).

Turning to that law, the admissibility of expert proof is generally governed by Rules 702 and 703 of the Tennessee Rules of Evidence. Rule 702 provides that "[i]f scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Tenn. R. Evid. 702. Rule 703 requires an expert's opinion to be supported by trustworthy facts or data "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Tenn. R. Evid. 703. A trial court should therefore "admit the testimony of a competent expert unless the party opposing the expert's testimony shows that it will not substantially assist the trier of fact or if the facts or data on which the opinion is based are not trustworthy pursuant to Rules 702 and 703." *Shipley v. Williams*, 350 S.W.3d 527, 551 (Tenn. 2011).

Kroger generally does not take issue with Dr. Laux's qualifications or credentials, but with the testimony itself, including the basis of Dr. Laux's opinions. Dr. Laux's opinions, Kroger contends, simply did not substantially assist the trier of fact in evaluating the evidence or determining the disputed issues. Once again, Kroger points to no analogous caselaw to support its position. And Kroger's argument as to prejudice is conclusory at best, simply noting that a new trial is required "if the outcome of the trial was affected" without specifying how the outcome was actually affected. Instead, Kroger merely argues that Dr. Laux's opinions were "unscientific and non-technical personal opinions" because Dr. Laux "measured nothing, conducted no tests of any kind, inspected nothing, and based her opinions on her experience as a member of the shopping public." Thus, Kroger asks that the entirety of Dr. Laux's testimony be stricken and a new trial granted as a result.

Respectfully, we do not agree. As an initial matter, we must first consider the unusual procedure that took place with regard to Dr. Laux's testimony. After detailing Dr. Laux's education and background, counsel for Ms. Wortham tendered Dr. Laux as an expert in the field of human factors engineering. Counsel for Kroger did not object but rather responded that he would "[r]eserve any objections until after cross-examination." The trial court "sustained" Kroger's request to reserve its objections until cross-examination.

Generally, objections to the admission of evidence are waived in the absence of a "contemporaneous" objection. *See* Tenn. R. Evid. 103(a)(1) (stating that error may not be

predicated on the admission of evidence unless "a timely objection or motion to strike appears of record, stating the specific ground of objection if the specific ground was not apparent from the context[.]"); *State v. Halake*, 102 S.W.3d 661, 669 (Tenn. Crim. App. 2001) (citing *Grandstaff v. Hawks*, 36 S.W.3d 482 (Tenn. Ct. App. 2000)) ("In order to challenge the introduction of evidence at trial on appeal, counsel must make a contemporaneous objection to the admission of the evidence."). "An objection is contemporaneous if counsel makes the objection in a motion in limine or at the time the objectionable evidence is about to be introduced." *Id.*; *see also Garner's Dictionary of Legal Usage* 212 (3rd ed. 2009) (defining contemporaneous as "belonging to the same time or period; occurring at about the same time"). Here, no motion in limine was filed concerning Dr. Laux's testimony as a whole. And no objection was lodged to Dr. Laux's qualifications at the time she was tendered as an expert. During her testimony, certain of Dr. Laux's opinions were objected to. However, it was not until after the witness's testimony ended and other discussions took place outside the hearing of the jury that counsel for Kroger finally asked that it be stricken in its entirety.[15] Still, Ms. Wortham makes no argument that this procedure resulted in waiver of Kroger's objection. Thus, while we have serious reservations about the procedure undertaken in the trial court on this issue, we will nevertheless consider the substantive merits of Kroger's argument on appeal.

Dr. Laux's testimony indicates that her opinions were based on her technical and educational experience, as an industrial psychologist with a concentration in human factors engineering, as well as gerontology. Courts in other states have considered human factors experts as admissible depending on the circumstances. *See, e.g., Georgia Dep't of Transportation v. Delor*, 351 Ga. App. 414, 427, 830 S.E.2d 519, 531 (2019), *reconsideration denied* (July 11, 2019), *cert. denied* (Mar. 26, 2020) (affirming the trial court's decision to admit the testimony of an engineer with specific expertise in human factors). *Wright v. Las Vegas Hacienda, Inc.*, 102 Nev. 261, 263, 720 P.2d 696, 697 (1986) (reversing the exclusion of a human factors engineering expert). In one case, the appellate court reversed the exclusion of a human factors engineer who was called to testify regarding an alleged dangerous condition. *Wichy v. City of New York*, 304 A.D.2d 755, 756, 758 N.Y.S.2d 385, 386 (2003). Similarly, Kroger has framed this case as involving an injury caused by an alleged dangerous condition.

Based on this expertise, Dr. Laux testified that Ms. Wortham's actions on the day of her accident were "perfectly expectable, exactly the behavior you expect of someone going shopping in a grocery store." Dr. Laux indicated that this conclusion was based on her "human factor analysis of this event, and the environment and the system." This analysis consisted of reviewing records, watching the video of the incident, speaking to witnesses, and reviewing the relevant recommended safety standards. Although Dr. Laux did sometimes speak in terms of her own consumer expectations, her testimony made clear that she was speaking in terms of general consumer expectations, rather than simply her

---

[15] The issue was properly raised in Kroger's motion for new trial.

own experiences, as she discusses both "reasonable shoppers" and "foreseeable shoppers[.]"

Dr. Laux's testimony as to the reasonableness of Ms. Wortham's actions was particularly relevant given that Kroger raised the affirmative defense that Ms. Wortham was at fault for her own injuries. Dr. Laux's testimony was therefore able to substantially assist the trier of fact in determining a fact in issue. Moreover, the testimony presented indicates that Dr. Laux performed a thorough review of the relevant facts and made conclusions based on her expertise. Kroger's rather conclusory argument that her testimony should have been excluded and that it affected the outcome of trial shows that, at most, reasonable minds could disagree as to the admissibility of Dr. Laux's testimony. Kroger therefore did not meet its heavy burden to show that the admission of this evidence was an abuse of discretion. *See **In re NHC-Nashville Fire Litig.***, 293 S.W.3d 547, 560 (Tenn. Ct. App. 2008) (holding that under the abuse of discretion standard, a ruling will be upheld so long as reasonable minds could disagree as to its propriety). The trial court's decision to admit the testimony of Dr. Laux is therefore affirmed.

## IV.    Motion for New Trial

Kroger next contends that the trial court erred in denying its motion for new trial. In particular, Kroger argues that a new trial is warranted because: (1) the verdict was contrary to the evidence and based on conjecture; (2) the verdict was excessive and based on passion and prejudice; and (3) misconduct committed by Ms. Wortham's counsel. As we have previously explained:

> When acting as the thirteenth juror in considering a motion for a new trial, the trial court must independently weigh the evidence, determine the issues presented, and decide whether the jury's verdict is supported by the evidence. *See **Overstreet v. Shoney's, Inc.***, 4 S.W.3d 694, 717 (Tenn. Ct. App. 1999). If, after weighing the evidence, the trial court is satisfied with the jury's verdict, the court must approve the verdict. *See **Ridings v. Norfolk S[.] Ry. Co.***, 894 S.W.2d 281, 288 (Tenn. Ct. App. 1994). If, on the other hand, the trial court is not satisfied with the verdict, it must grant a new trial. *See **id.*** "The trial court's performance of its function as thirteenth juror must be performed without regard to and without deference being shown to the result reached by the jury." *See **id.*** at 288–89. An appellate court presumes the trial court properly performed its duty as the thirteenth juror when the trial court approves the jury's verdict without comment. *See **id.*** at 289. Where . . . the trial court makes comments regarding the verdict on the record, this Court examines such comments in order to determine "whether the trial court properly reviewed the evidence, and was satisfied or dissatisfied with the verdict." ***Miller v. Doe***, 873 S.W.2d 346, 347 (Tenn. Ct. App. 1993). This Court may reverse the lower court's judgment and order a new trial only

when the record contains statements that the trial court was dissatisfied with or disapproved of the jury's verdict or when the trial court absolved itself of or misconstrued its function as the thirteenth juror. *See id.*

***Dickey v. McCord***, 63 S.W.3d 714, 718–19 (Tenn. Ct. App. 2001). This Court therefore "cannot review the accuracy of the trial court's determination as thirteenth juror." ***Overstreet***, 4 S.W.3d at 718 (citing ***State v. Moats***, 906 S.W.2d 431, 435 (Tenn. 1995)).

We begin by quickly dispensing with Kroger's argument that the trial court abused its discretion when it failed to rule that the jury's verdict was against the weight of the evidence. Here, Kroger once again fills its argument with generally applicable law governing requests for new trial when the verdict is against the weight of the evidence. Kroger's effort to apply this standard to the facts of this law is, however, lackluster. Kroger does no more than point to the lack of proof as to how or when, exactly, the wheel detached from the shopping cart and offers this conclusory argument: "The jury's verdict was against the weight of the evidence and based on conjecture and speculation. The Trial Court erred because it should have exercised its role as thirteenth juror and granted a new trial." Here, the trial court declined to grant Kroger's motion for new trial. Kroger makes no argument that the trial court indicated that it was dissatisfied with the ultimate jury verdict or failed to perform its function as thirteenth juror. Moreover, as previously discussed, it was not unreasonable for the jury to conclude, based on the evidence presented, that Ms. Wortham's injuries resulted from Kroger's negligence. Kroger therefore failed to show how the trial court abused its discretion in denying its motion for new trial on this basis.

Kroger next contends that the trial court should have granted a new trial because the jury's verdict was excessive and based on passion and prejudice. In support, Kroger makes three points: (1) the jury raised a question regarding whether they could award punitive damages, when punitive damages were not raised by the parties at trial; (2) Ms. Wortham's counsel committed misconduct; and (3) the excessiveness of the verdict itself shows that the verdict was the result of passion and prejudice.

A recap of the pertinent facts is useful to our discussion regarding the punitive damages issue. During the pre-trial proceedings, Ms. Wortham requested punitive damages, but the trial court denied that request. Punitive damages were not specifically mentioned during trial and were not a permitted measure of damages on the jury verdict form. Nevertheless, during deliberations, the jury inquired as to whether they could award punitive damages and whether a special verdict form was necessary. The following conversation therefore took place outside of the jury's presence:

> THE COURT: Yesterday, we broke and then before they began deliberations this morning, Officer Houston was handed a note and the note reads: Does this case permit punitive damages? And if so, is there a special form? Which raises serious concerns for me that one of the jurors clearly is looking: for

other information. I mean, since there was no references to punitive damages then it raises a concern with me that, you know, on his own, he's coming up with this.

[Counsel for Ms. Wortham]: I can answer yes, if Your Honor would change his opinion. I mean, I think that is fair. We didn't suggest it, Your Honor. I didn't make the argument. [My co-counsel] didn't make the argument.

THE COURT: Yeah.

[Counsel for Ms. Wortham]: I think he just needs to be told very clearly that that was not part of the case and not requested. Whatever Your Honor feels appropriate. Agree?

[Counsel for Kroger]: Agree. I have concern too, Your Honor. Concerns that, I mean, that was not part of the case.

THE COURT: Okay. Then I'm just going to write back that that was not part of the case and they need to look at the verdict form and the instructions as far as what the damage is.

[Counsel for Ms. Wortham]: Perhaps not an issue for you to concern yourself about. Thank you, Your Honor.

THE COURT: Thank you very much.

Kroger contends that this situation necessitates a new trial, citing ***Zeiter v. Sevier Cty. Bank***, No. CA 156, 1989 WL 22718 (Tenn. Ct. App. Mar. 17, 1989). In ***Zeiter***, the jury was not instructed as to punitive damages but nevertheless awarded punitive damages in its ultimate verdict. ***Id.*** at \*1. The trial court thereafter granted the defendant's motion for new trial, ruling that:

> [A] verdict by the jury which included Ten Thousand Dollars ($10,000.00) as punitive damages where the Court had already ruled in the course of the trial that the evidence would not sustain the recovery of the same by the Plaintiff and the jury was not charged thereon, indicates the jury was biased against the Defendant, Sevier County Bank, the entire verdict was tainted, and therefore the Defendant did not receive a fair trial and Defendant's motion should be granted.

***Id.*** at \*2.

The Court of Appeals affirmed the trial court's decision, ruling that the trial court was within its discretion to set aside a verdict that was inconsistent with the judge's instructions. ***Id.*** The situation presented in this case is similar, but not identical. Most importantly, the jury here did not award punitive damages inconsistent with the trial court's instructions. Rather, the jury merely inquired as to whether punitive damages were available, and after learning that they were not, followed the trial court's instructions by not awarding damages of that type.

Thus, Kroger complains not that the jury's verdict was inconsistent with the trial court's instructions but that the mere asking of the question was sufficient to warrant a new trial. However, as noted above, Kroger did not raise any objection whatsoever at the time the question was posed that this question alone would taint any future jury verdict. Rather, when counsel for Ms. Wortham offered a solution to the issue posed by the jury's question, counsel for Kroger acquiesced in that solution. Rule 36(a) of the Tennessee Rules of Appellate Procedure provides that the rules should not "be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Here, Kroger did not make a contemporaneous objection to the trial court's remedy for the jury's question and it did not at that time assert that this question, in and of itself, tainted the proceedings such that a new trial would be warranted. Rather, it appears that Kroger may have withheld an objection as an "ace in the hole" to undermine any future jury verdict. As we have explained, however,

> It is a general rule of trial practice that a party is not permitted to withhold objection to an occurrence during the trial, saving the objection as an "ace in the hole" to be used in event of an unfavorable outcome. Rather, parties are required to make timely objection or motion to remedy an error to enable the correction of the error and the avoidance of the expense of a new trial, and a failure to make such timely objection or motion is considered a waiver.

*Eldridge v. Eldridge*, No. 01A01-9808-CV-00451, 1999 WL 767792, at *3 (Tenn. Ct. App. Sept. 29, 1999) (quoting *McGrath v. Mitchell*, No. 89-10-II, 1989 WL 57732, at *7 (Tenn. App. June 1, 1989) (citations omitted)); *cf. State v. Whitehead*, No. M2014-00748-CCA-R3-CD, 2015 WL 4148363, at *7 (Tenn. Crim. App. July 9, 2015) (discussing the question of whether a failure to seek a mistrial at the occurrence of an error constitutes a waiver). Given the fact that Kroger did not offer any objection at the time that the jury posed this question and the jury ultimately followed the trial court's instructions, we cannot conclude that Kroger has shown that the trial court abused its discretion in denying the motion for new trial on this basis.

Kroger also asserts that a new trial was warranted due to misconduct on the part of Ms. Wortham's counsel during closing arguments. Argument of counsel is generally controlled by the trial court:

> In general, the control over the argument of counsel resides with the trial court, and the trial court has broad discretion as to what shall and shall not be permitted in argument. The appellate courts generally will not interfere with the discretionary action of a trial court in refusing to grant a mistrial or a new trial for misconduct of counsel in argument unless the argument is clearly unwarranted and made purely for the purpose of appealing to passion, prejudices and sentiment which cannot be removed by sustaining the

objection of opposing counsel.

**Davis v. Hall**, 920 S.W.2d 213, 217 (Tenn. Ct. App. 1995) (citing **Perkins v. Sadler**, 826 S.W.2d 439, 442 (Tenn. Ct. App. 1991)).

Kroger details various comments made by Ms. Wortham's counsel that Kroger contends was inappropriate. For example, at one point, Ms. Wortham's counsel makes the following comment: "Am I ashamed to ask for large damages to a woman who's now homebound, permanently impaired, on a walker or a wheelchair from a company that attacks her? No I am not." Kroger also takes issue with counsel's action in telling the jury a story of his father, a slight man, beating up a larger opponent for slapping his wife, implying that Kroger was the larger bullying opponent and that the jury was to put Kroger in its place.[16] These comments, Kroger contends, both together and in isolation, were improper and led the jury to render a verdict not based on the evidence, but based on prejudice, passion and caprice.

After a thorough review of the record, we must conclude that any argument predicated on alleged improper arguments of counsel during closing arguments is waived. Specifically, our review of the transcript reveals that Kroger lodged no contemporaneous objections to the argument that it now deems improper.[17] Indeed, while the parties lodged various objections throughout the closing argument phase of trial, the specific arguments raised by Kroger did not result in any objection whatsoever until Kroger's motion for new trial. It is well-settled, however, that a party may lose the right to challenge alleged improper argument during closing arguments by failing to make a contemporaneous objection. *See* **State v. Young**, No. W2008-01885-CCA-R3-CD, 2010 WL 161502, at *2

---

[16] Kroger also takes issue with the following comments, which are reproduced from its brief:

- "The question is not only how much did Kroger take away, but what did it leave her with?"
- "We're here because Kroger forced Ms. Wortham to hire lawyers."
- "That's what was taken from her, the right to go to church, or Tunica if she wants to."
- "But the question really becomes as you look at this, what did Kroger take from her?"

*  *  *

- Referring to [Ms. Wortham's] rights to freedom, liberty, and independence: "In spite of any fancy speeches, Kroger took them."

[17] Moreover, Kroger's brief does not indicate where any objections to these statements were lodged. Rule 6 of the Rules of the Court of Appeals of Tennessee provides that arguments must be accompanied by "[a] statement showing how such alleged error was seasonally called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded." Tenn. R. Ct. App. 6(a)(2). Kroger's argument contains no statement of where Kroger raised a challenge to this allegedly improper argument during trial.

(Tenn. Crim. App. Jan. 15, 2010) (waiving all arguments predicated on improper closing arguments that were not preserved through a contemporaneous objection); *State v. Cotton*, No. 01C01-9805-CR-00209, 1999 WL 701409, at *10 (Tenn. Crim. App. Sept. 10, 1999) ("Failure to object contemporaneously to improper argument constitutes a waiver pursuant to Rule 36(a)[.]"). Indeed, the cases cited by Kroger as factually similar to this case all involved a contemporaneous objection to the alleged improper argument. *See Draper v. Airco, Inc.*, 580 F.2d 91, 94 n.2 (3d Cir. 1978) ("Counsel for the defendants objected to plaintiff's counsel's remarks at the conclusion of the closing argument and requested certain curative instructions."); *Davis v. Hall*, 920 S.W.2d 213, 217 (Tenn. Ct. App. 1995) (noting that the party objected to the improper argument); *Doochin v. U.S. Fid. & Guar. Co.*, 854 S.W.2d 109, 115 (Tenn. Ct. App. 1993) (noting that the party objected to the improper argument); *Guess v. Maury*, 726 S.W.2d 906, 913 (Tenn. Ct. App. 1986), *overruled by Elliott v. Cobb*, 320 S.W.3d 246 (Tenn. 2010) (noting that trial counsel made numerous objections to the allegedly improper argument at trial).

The one cited case in which no contemporaneous objection was made ended poorly for the appellant based on the following description of the waiver rule:

> Winning battles often involves choosing one's battleground. That maxim applies with particular force in adversarial litigation. We have made it transparently clear that the raise-or-waive rule can neither be ignored nor brushed aside as "a pettifogging technicality or a trap for the indolent." Rather, it is a prudential rule "founded upon important considerations of fairness, judicial economy, and practical wisdom." Thus, if a party forgoes objections in the district court, it becomes exponentially more difficult for him to mount those objections on appeal.

*Muniz v. Rovira*, 373 F.3d 1, 4 (1st Cir. 2004) (citations omitted). Under this standard, the federal court concluded that the defendant waived his arguments to improper jury arguments and failed to demonstrate the high burden of plain error. *Id.* at 6. We reach the same result in this case.[18]

Finally, Kroger contends that the jury verdict itself is so excessive as to warrant a new trial. It is true that a trial judge who is not satisfied with the jury's verdict may set aside the verdict and order a new trial. *Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W.3d 414, 420 (Tenn. 2013) (citing *Jones v. Idles*, 114 S.W.3d 911, 914–15 (Tenn. 2003)). When the trial judge's dissatisfaction is based solely on the damages awarded, however, the trial judge may instead "suggest a remittitur, which, if accepted by the plaintiff, would reduce the award to an amount the judge deems appropriate." *Id.* (citing *Turner v. Jordan*, 957 S.W.2d 815, 824 (Tenn. 1997)). This method of correcting an excessive verdict is preferred

---

[18] We note that at no point in Kroger's brief does it assert that a plain error occurred or that this Court should apply that standard.

"[d]ue to concerns of cost and efficiency[.]" *Id.* at 421. In this case, Kroger asserts that the verdict was so excessive that the trial court not only should have reduced the verdict but should have awarded an entirely new trial. Because the excessiveness of the verdict is the linchpin of either request, for the interest of judicial economy, we will consider these arguments jointly.

## V. Excessive Verdict

Finally, we consider whether the jury's verdict was excessive so as to require a remittitur or new trial. The responsibility for resolving issues related to the assessment of damages is entrusted to the jury. *Meals*, 417 S.W.3d at 419 (citing Tenn. Const. art. I, § 6). The award of damages is meant to compensate the plaintiff for damage caused by the defendant's wrongful conduct, making the plaintiff whole. *Id.* (citing *Inland Container Corp. v. March*, 529 S.W.2d 43, 44 (Tenn. 1975)). "The plaintiff bears the burden of proving damages to such a degree that, while perhaps not mathematically precise, will allow the jury to make a reasoned assessment of the plaintiff's injury and loss." *Id.* (citing *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999)). A plaintiff is entitled to recover both economic and noneconomic damages. *Id.* While economic damages cover losses such a medical expenses and lost wages, "'[n]on-economic damages include pain and suffering, permanent impairment and/or disfigurement, and loss of enjoyment of life.'" *Id.* at 419–20 (quoting *Elliott v. Cobb*, 320 S.W.3d 246, 248 n.1 (Tenn. 2010)). The assessment of noneconomic damages is "left to the sound discretion of the trier of fact," *Overstreet*, 4 S.W.3d at 703, with the trial court serving as "an important check" on the jury's discretion by serving as thirteenth juror:

> As thirteenth juror, the trial judge must independently weigh and review the evidence presented at trial to determine whether it preponderates in favor of the verdict and decide whether he or she agrees with and is satisfied with the jury's verdict. *See State v. Moats*, 906 S.W.2d 431, 433 (Tenn. 1995). No verdict is valid unless approved by the trial judge acting as the thirteenth juror. *See id.* at 434; *Shivers v. Ramsey*, 937 S.W.2d 945, 947 (Tenn. Ct. App. 1996).

*Meals*, 417 S.W.3d at 420. As noted above, in addition to the remedy of granting a new trial, a trial court may cure an excessive verdict through the process of remittitur. *Id.* (citing Tenn. Code Ann. § 20-10-102(a) (allowing for the trial court to suggest a remittitur following a civil jury trial)). "[R]emittiturs were designed to correct the excessiveness or inadequacy of a jury's verdict as an alternative to the granting of a new trial." *Foster v. Amcon Int'l, Inc.*, 621 S.W.2d 142, 148 (Tenn. 1981).

As an appellate court, our discretion to grant a remittitur is far more circumscribed than the trial court. "Where the trial judge has approved the verdict in its role as thirteenth juror . . . the Court of Appeals' review of the verdict and its ability to suggest a remittitur

is limited to a review of the record to determine whether the verdict is supported by material evidence." ***Meals***, 417 S.W.3d at 422 (citing ***Poole v. Kroger Co.***, 604 S.W.2d 52, 54 (Tenn. 1980)). Even where the trial court has suggested a remittitur, thereby disagreeing with at least a portion of the jury's verdict, the standard remains the same in this Court. *See* ***Borne v. Celadon Trucking Servs., Inc.***, 532 S.W.3d 274, 306 (Tenn. 2017) ("We see no reason why the ***Meals*** material evidence standard would not remain applicable where the trial court has suggested a remittitur because, in such a case, the trial judge has in fact approved the jury's verdict up to the remitted amount."). As the Tennessee Supreme Court explained this standard:

> Material evidence is "evidence material to the question in controversy, which must necessarily enter into the consideration of the controversy and by itself, or in connection with the other evidence, be determinative of the case." ***Knoxville Traction Co. v. Brown***, 115 Tenn. 323, 331, 89 S.W. 319, 321 (1905). An appellate court is required to take "the strongest legitimate view of all the evidence in favor of the verdict, assume the truth of all evidence that supports the verdict, allowing all reasonable inferences to sustain the verdict, and to discard all countervailing evidence." ***Akers v. Prime Succession of Tenn., Inc.***, 387 S.W.3d 495, 501–02 (Tenn. 2012) (quoting ***Barkes v. River Park Hosp., Inc.***, 328 S.W.3d 829, 833 (Tenn. 2010)). The material evidence analysis is very deferential to the award by the jury and the judgment of the trial court when it affirms the verdict as the thirteenth juror. *See* ***Ellis***, 603 S.W.2d at 129 ("[W]hen the trial judge has approved the verdict, the review in the Court of Appeals is subject to the rule that if there is any material evidence to support the award, it should not be disturbed." (emphasis added)). "It matters not a whit where the weight or preponderance of the evidence lies under a material evidence review." ***Hohenberg Bros. Co. v. Mo. Pac. R.R. Co.***, 586 S.W.2d 117, 119–20 (Tenn. Ct. App. 1979). "It is simply a search of the record to ascertain if material evidence is present to support the verdict." ***Id.*** Because the material evidence standard lies at the foundation of the right to trial by jury, if there is material evidence to support a jury verdict, the appellate courts must affirm it. *See* Tenn. Const. art. I, § 6; ***Truan v. Smith***, 578 S.W.2d 73, 74 (Tenn. 1979) (quoting ***D.M. Rose & Co. v. Snyder***, 185 Tenn. 499, 508, 206 S.W.2d 897, 901 (1947)); ***Crabtree Masonry Co.***, 575 S.W.2d at 5; ***City of Chattanooga v. Ballew***, 49 Tenn.App. 310, 316–17, 354 S.W.2d 806, 808–09 (1961); *see also* ***Grandstaff v. Hawks***, 36 S.W.3d 482, 497 (Tenn. Ct. App. 2000) ("We have a duty to uphold a jury's verdict whenever possible.").

***Meals***, 417 S.W.3d at 422–23. Thus, in asking us to further remit the jury's verdict as excessive, Kroger's burden "is extraordinarily high." ***Borne***, 532 S.W.3d at 306. Rather, this Court may grant a remittitur "only if it finds that the award exceeds the uppermost boundary of the range of reasonableness under the evidence presented, i.e., 'the amount

beyond which there is no evidence, upon any reasonable view of the case, to support the verdict.'" ***Id.*** (citing ***Ellis***, 603 S.W.2d at 126) (footnote omitted).

Here, Kroger requested both a remittitur and a new trial. The trial court reduced the jury's award of economic damages to reflect the evidence regarding Ms. Wortham's medical bills. The trial court, however, denied any remittitur of the jury's award of noneconomic damages other than reducing the damages allowed to comply with the statutory cap. Kroger asserts that the trial court's decision was in error for two reasons. First, Kroger asserts that the trial court applied an incorrect legal standard in refusing to consider remittitur when the cap reduced the damages awarded. Second, Kroger asserts that the award was patently excessive.

Kroger first contends that the trial court applied an incorrect standard when it denied Kroger's request for remittitur. In its order denying Kroger's post-trial motion, the trial court noted its role as thirteenth juror, along with the fact that the noneconomic damages had been "reduced by law" by 71.2%, and ruled that $90,118.40 in economic damages and $750,000.00 in noneconomic damages was appropriate after "carefully consider[ing] the proof[.]" According to Kroger, however, the trial court applied an incorrect standard by allowing the statutory reduction in damages to stand in for the judge's duty with regard to a request for a remittitur. We agree with Kroger that the application of the statutory noneconomic damages cap is not a substitute for the judge's role as the thirteenth juror. Indeed, in upholding the constitutionality of Tennessee Code Annotated section 29-39-102, the Tennessee Supreme Court explained that application of the statutory cap is wholly distinct from the suggestion of remittitur, as remittitur occurs "because the trial judge disagrees with the reasonableness of the jury's assessment of damages based on the evidence presented[,]" while the statutory cap is applied "as a matter of law." ***McClay v. Airport Mgmt. Servs., LLC***, 596 S.W.3d 686, 691 n.5 (Tenn. 2020). We cannot conclude, however, that the trial court allowed the application of the statutory cap to be a substitute for its role at thirteenth juror. Here, the trial court noted its role as thirteenth juror, including its obligation to independently weigh the evidence to determine whether it preponderated in favor of the verdict. Although the trial court did not make detailed findings as to the evidence it found relevant to this inquiry, Kroger cites no law that states that a trial court is required to make detailed findings of fact or conclusions of law when it denies a requested remittitur.

We also cannot find error in the trial court's consideration of the fact that while the jury awarded $2,600,000.00 in noneconomic damages, that award was reduced by operation of law to $750,000.00. At the time briefs were filed, Kroger argued that both the $2.6 million awarded by the jury and the $750,000.00 actually recoverable were excessive, while Ms. Wortham argued that even the higher award was not excessive. Following the Tennessee Supreme Court's decision to uphold the constitutionality of the noneconomic damage cap and Ms. Wortham's decision to withdraw her challenge on appeal, there can be no dispute that, at most, only $750,000.00 in noneconomic damages are at issue in this

case.

No Tennessee cases have expressly considered the appropriate scope of our review in this situation. For example, in **Monypeny v. Kheiv**, No. W2014-00656-COA-R3-CV, 2015 WL 1541333, at \*23 (Tenn. Ct. App. Apr. 1, 2015), the opinion cites the entire jury's verdict but does not state if its ultimate decision that the judgment was not excessive considers the fact that the verdict was reduced to comply with the cap. In another case, this Court expressly noted the issue but declined to address it in light of the fact that neither party addressed in their brief. *See* **Yebuah v. Ctr. for Urological Treatment, PLC**, No. M2018-01652-COA-R3-CV, 2020 WL 2781586, at \*10 (Tenn. Ct. App. May 28, 2020) ("Both the [defendant] and the [plaintiffs] address the reasonableness of the damages awarded before reduction by the statutory cap. Thus, we do not decide the impact of the statutory cap on our review."). It appears that these represent the only two Tennessee cases in which remittitur was at issue on appeal notwithstanding the application of the statutory cap.

From our review, this situation is rare even outside our jurisdiction. In one case, however, an appellate court has indicated that the fact that a jury verdict was reduced should not be ignored in determining the excessiveness of a verdict. *See* **Ng-Wagner v. Hotchkiss**, No. 413, SEPT.TERM, 2016, 2018 WL 2277803 (Md. Ct. Spec. App. May 18, 2018). In **Ng-Wagner**, the parties entered into a gestational carrier contract. The carrier did not disclose prior pregnancy complications, and the child died shortly after birth due to complication. *Id.* at \*1. Following the proof, the jury awarded the plaintiffs $5,000.00 for funeral expenses and a combined $44.1 million in noneconomic damages.[19] *Id.* at \*4. The defendants filed a motion for remittitur, which the trial court granted, remitting the funeral expenses to $2,669.75, the amount actually paid, and the noneconomic damages to $887,500.00, the statutory cap pursuant to Maryland Code. *Id.*

On appeal, the defendants argued that the $44.1 million verdict was so excessive that it warranted either a remittitur or, preferably, a new trial. Similar to this case, the defendants asserted that the amount of the jury verdict itself was proof that it "must have resulted from improper motivation or influence" and that a new trial should therefore be ordered. *Id.* at \*17 (citing the plaintiff's characterization of the defendants' argument). The plaintiffs responded that the judgment was fair and that, in any case, questions regarding the $44.1 million judgment were moot when the trial judge had reduced the judgment to the cap. Ultimately, the court affirmed the award, noting that the trial court had in fact remitted the initial jury verdict to comply with the statutory cap and that the issue was reviewed only for an abuse of discretion. *Id.* at \*17−18.

Unfortunately, the reasoning employed by the **Ng-Wagner** court is somewhat

---

[19] Of the total award, $2.1 million was awarded to the child's estate, while the remainder was awarded to her parents. *Id.* at \*4.

obscure. What is clear, however, is that in determining that the trial judge did not abuse its discretion in finding that the verdict was not excessive, the Maryland appellate court took into consideration the fact that the verdict had been reduced to $887,500.00. Thus, this case suggests that appellate courts should not ignore the realities of the situation in determining whether a trial court abuses its discretion in refusing to set aside or remit a verdict based on the defendant's contention that it was excessive.

As pointed out by Kroger, Tennessee courts are directed to adjudicate disputes only so long as they remain "a genuine and existing controversy requiring the present adjudication of present rights." *McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994). We therefore do not render merely advisory opinions, but decide only disputed issues that are "real and existing" rather than "theoretical or abstract[.]" *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cty.*, 301 S.W.3d 196, 203 (Tenn. 2009) (citing *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 192 (Tenn. 2000); *State ex rel. Lewis v. State*, 208 Tenn. 534, 536–37, 347 S.W.2d 47, 48 (Tenn. 1961)). In this case, the jury's $2.6 million noneconomic damages award is no longer "real and existing" due to the application of the damage cap, which cap is without dispute in this appeal. To consider the jury award without considering the reduction created by the cap would be to adjudicate theoretical rights. Thus, we cannot find error in the trial court's refusal to ignore the reality of the award in adjudicating Kroger's motion for remittitur. We will therefore take the same tactic on appeal.

Kroger also asserts that the fact that the jury's award exceeded the statutory cap on damages by over one-half indicates that the jury's verdict was excessive and that the application of the cap does not "cure" the excessive jury amount. In support, Kroger notes that Tennessee courts have held that remittiturs cannot stand when they totally destroy the jury's verdict. *See Johnson v. Nunis*, 383 S.W.3d 122, 134 (Tenn. Ct. App. 2012) (citing *Long v. Mattingly*, 797 S.W.2d 889, 896 (Tenn. Ct. App. 1990)) (adjustments to verdicts "that 'totally destroy' the jury's verdict are impermissible"). As noted above, application of the statutory cap is distinct from the suggestion of remittitur procedure. *McClay*, 596 S.W.3d at 691 n.5. Moreover, by Kroger's argument, any verdict for noneconomic damages would be deemed excessive when it exceeded the statutory cap and would be subject to further remittitur even though the damages were reduced by operation of the statute and are otherwise supported by the evidence presented. A party against whom damages are awarded would thereby be able to "double dip" by taking advantage of the statutory cap and by showing that simply by applying the cap, the damages were excessive and subject to further reduction or a new trial. Kroger cites no law to support this interpretation of the damages cap, and we decline to accept such a strained interpretation. Here, the Tennessee General Assembly has determined that a $750,000.00 cap on noneconomic damages is appropriate to compensate injured parties. The Tennessee Supreme Court has held that the General Assembly was within its authority to do so. *Id.* We decline to apply the cap in a manner that necessitates further reduction in jury awards simply because the cap was applied. To do so would excuse defendants of their

"extraordinarily high" burden in seeking remittitur in the appellate courts. ***Borne***, 532 S.W.3d at 306.

A similar argument was rejected by the Colorado Court of Appeals. *See **Valdez v. Pringle***, 143 P.3d 1069 (Colo. App. 2005), *aff'd in part, rev'd in part*, 171 P.3d 624 (Colo. 2007). In ***Valdez***, the jury was instructed that due to a peculiar piece of Colorado statutory law involving drivers who do not wear seatbelts, referred to as the "seatbelt defense statute," it could award noneconomic damages other than pain and suffering. The jury ultimately awarded the plaintiff $400,000.00 for disfigurement and $100,000.00 for noneconomic damages other than pain and suffering. As one of the multitude of issues raised on appeal, the defendant argued that the award of $100,000.00 for noneconomic damages other than pain and suffering was "manifestly excessive when compared with the $366,250 statutory cap on noneconomic damages." ***Id.*** at 1074. The Colorado appellate court rejected this argument, however, concluding that "nothing in the cap placed by the General Assembly on the amount a jury may award for noneconomic damages other than impairment and disfigurement reflects an intent otherwise to limit the discretion of a jury to determine an award within the statutory range." ***Id.*** Although the Colorado Supreme Court ultimately ruled that all noneconomic damages other than disfigurement and impairment were covered by the seat belt defense statute, thereby invalidating that award, nothing in the high court's opinion indicates its belief that awards above the statutory cap necessarily lead to a conclusion that an award is excessive. *See generally **Pringle v. Valdez***, 171 P.3d 624 (Colo. 2007).

Kroger next contends that the award in this case was excessive because medical evidence showed that Ms. Wortham did not have "lingering pain" following her surgery or difficulty recovering. It is true that Ms. Wortham's treating physician testified that Ms. Wortham's pain could "go away virtually completely." Under the material evidence standard, we take "the strongest legitimate view of all the evidence in favor of the verdict, assume the truth of all evidence that supports the verdict, allowing all reasonable inferences to sustain the verdict, and [] discard all countervailing evidence." ***Meals***, 417 S.W.3d at 422 (citing ***Akers***, 387 S.W.3d at 501–02).

Here, disregarding all countervailing evidence, we must conclude that Ms. Wortham continued to suffer pain at the time of trial. Although Ms. Wortham had a good recovery, the evidence shows that as an 88-year old woman at the time of the accident, she was likely to continue suffering aching pain following the accident and surgery. Ms. Wortham was required to use pain medication to control her pain, which fortunately was helpful in controlling it. Indeed, Kroger does not dispute that Ms. Wortham "experienced pain as a result" of her injury.

It is also important to note that noneconomic damages do not compensate for pain alone. As the Tennessee Supreme Court explained,

Damages for pain and suffering are awarded for the physical and mental suffering that accompany an injury. *Overstreet*, 4 S.W.3d at 715. Damages awarded for loss of enjoyment of life are intended to compensate a plaintiff for the impairment of the ability to enjoy the normal pleasures of living. *Lang v. Nissan N. Am., Inc.*, 170 S.W.3d 564, 571–72 (Tenn. 2005). Assigning a compensable, monetary value to non-economic damages can be difficult. *See Wolfe*, 177 Tenn. at 688, 152 S.W.2d at 635 (citing *Power Packing Co. v. Borum*, 8 Tenn. App. 162 (1928)). The assessment of non-economic damages is not an exact science, nor is there a precise mathematical formula to apply in determining the amount of damages an injured party has incurred. *See McCullough v. Johnson Freight Lines, Inc.*, 202 Tenn. 596, 606, 308 S.W.2d 387, 392 (1957); *S. Ry. Co. v. Sloan*, 56 Tenn.App. 380, 392, 407 S.W.2d 205, 211 (1965). Thus, a plaintiff is generally not required to prove the monetary value of non-economic damages. *Health Cost Controls*, 239 S.W.3d at 733 (citing 22 Am.Jur.2d *Damages* § 200 (2007)).

*Meals*, 417 S.W.3d at 420. In this case, Ms. Wortham was required to undergo an emergency surgery wherein a foreign object was placed in her body, two weeks of hospitalization, and six weeks of in-home physical therapy to regain strength and mobility. Although Ms. Wortham undisputedly recovered well from the surgery, the evidence established that she suffered pain and will continue to suffer pain as the result of her injury. Indeed, Ms. Wortham testified that she experienced pain "practically every day."

Moreover, there was considerable evidence that Ms. Wortham suffered due to the lack of independence that resulted from her injury. Again, taking the evidence in her favor, Ms. Wortham testified that she was highly independent prior to her accident, living on her own with occasional guests, cooking large weekly meals for her family, and traveling without a walker most of the time. The fall changed all that.

Now, Ms. Wortham is likely to use a walker for the rest of her life. She can no longer stand for significant periods of time, meaning that she can no longer prepare the large meals she once did for her family. She cannot drive or attend church services or senior citizen center events independently and consistently, whereas she socialized at these locations independently up to five days per week prior to her accident. Ms. Wortham is also unable to complete her own housework.

Kroger cites only one case that it contends show the excessiveness of the verdict in this situation. Although the Tennessee Supreme Court has authorized this Court to compare the verdict at issue with those in similar cases, the court cautioned against too heavy a reliance on this tactic. As the court explained:

First, we recognize that by reviewing verdicts in published opinions, we are not reviewing the entire pool of damage awards. Cases resolved by

- 42 -

settlement and/or mediation are not included in the pool of damage awards, and their absence can skew the results. Second, we must take care to only consider cases that are "similar"—presumably involving a similar plaintiff with similar injuries. Third, courts should take inflation and the reduced value of the dollar into account when considering these verdicts. . . . Finally, courts should be mindful that when looking at other jury verdicts, each case must be judged on its own particular facts.

*Id.* at 426 (citations omitted). Moreover, the court noted that juries have "wide latitude in assessing non-economic damages" and that we should generally "trust jurors" to use their experiences "to value the intangible harms such as pain, suffering, and the inability to engage in normal activities[.]" *Id.* at 425. As such, while we must protect against excessive verdicts, we cannot second-guess the jury or substitute our judgment for theirs. *Id.* at 435 (citing *Coffey v. Fayette Tubular Prods.*, 929 S.W.2d 326, 330–31 & n.1 (Tenn. 1996)).

Keeping this in mind, we turn to Kroger's cited case, *Hardesty v. Serv. Merch. Co.*, 953 S.W.2d 678 (Tenn. Ct. App. 1997). In *Hardesty*, the plaintiff suffered a hip fracture while shopping at the defendant store. *Id.* at 680. The plaintiff was required to undergo surgery to correct the fracture. *Id.* The jury found that the defendant store was 95% at fault for the plaintiff's injuries and awarded $250,000.00 to the plaintiff and $150,000.00 to her husband as damages. *Id.* The trial court found that the jury verdict was so excessive that the award could not be remitted and ordered a new trial. *Id.* A different judge then granted a motion for summary judgment, ruling that the plaintiff failed to show actual or constructive notice of a dangerous condition. The plaintiff appealed. *Id.*

We first affirmed the trial court's decision to grant a new trial, rather than a remittitur, noting that the trial court was within its authority "acting in its role as thirteenth juror" to not accept the jury's verdict, the decision to grant a new trial was warranted. *Id.* at 681. We reversed, however, the first judge's denial of the defendant's motion for a directed verdict. In so ruling, we noted the plaintiff produced no evidence that the defendant's employees created the dangerous condition or had notice of it. In this situation, the court ruled that there was "a complete absence of proof as to when and how the dangerous condition came about" and that inferring negligence from this lack of proof was inappropriate. *Id.* at 683. On the same basis, we ruled that the second judge correctly granted summary judgment in favor of the defendant. *Id.* at 684.

Factual and procedural differences mean that *Hardesty* is little support for Kroger's arguments in this case. First, the procedural posture of the two cases is important. In *Hardesty*, the trial court granted a new trial based on its belief of the excessiveness of the damages. The plaintiff was therefore burdened on appeal to show an abuse of the trial court's discretion. The same is not true in this case. Here, the defendant has the "extraordinarily high" burden to show that the damages were not supported by material evidence in this case.

The ***Hardesty*** opinion also focuses very little on the facts surrounding the plaintiff's pain and suffering. Nothing in the opinion states the age of the plaintiff, the pain that she suffered, whether she had lingering pain, or the effects of the accident on her enjoyment of life. In short, we have no facts to compare to the present case to determine if ***Hardesty*** shows that the jury verdict in this case is outside the range of reasonableness.

Kroger's initial brief offers no analysis of a single additional case to show that the award in this case was outside the range of reasonableness. Moreover, other than asserting that the evidence does not support even the statutorily-capped award of $750,000.00, Kroger makes no argument as to what an appropriate award of noneconomic damages would be in this case. However, "a finding of excessiveness necessarily involves a determination of the dollar figure that represents the point at which excessiveness begins, and that figure is the upper limit of the range of reasonableness." ***Ellis v. White Freightliner Corp.***, 603 S.W.2d 125, 129 (Tenn. 1980) (citing ***Southern R.R. Co.***, 407 S.W.2d at 211). The lack of analogous caselaw cited in Kroger's brief, coupled with its failure to posit a figure that represents its view of the upper range of reasonableness, significantly hampers review in this case.

We concede that even the $750,000.00 figure awarded in this case is very high given Ms. Wortham's injuries. The question is not whether this Court would have awarded a lower amount, however, but whether the award is so excessive as to warrant intervention by this Court. Here, the evidence shows that along with continuing pain, the most significant injury experienced by Ms. Wortham was the loss of her independence. Such a loss cannot be quantified. Other cases that involve pain along with a loss of independence have resulted in similarly high awards of noneconomic damages. *See **Monypeny v. Kheiv***, No. W2014-00656-COA-R3-CV, 2015 WL 1541333, at *23 (Tenn. Ct. App. Apr. 1, 2015) (affirming a noneconomic damage award of $1,050,000, after taking into account the plaintiff's loss of independence following the injury; the award was later reduced to comply with the statutory cap, resulting in an identical award of recoverable noneconomic damages). Moreover, much of the support for Kroger's assertion that the jury's verdict was based on passion and prejudice rests on assignments of error that have been waived on appeal.[20] On the whole, we cannot conclude that Kroger's rather conclusory argument meets its extraordinarily high burden to show that no material evidence supports the jury's verdict. Kroger's request for a remittitur or new trial must therefore be denied.

## CONCLUSION

The judgment of the Shelby County Circuit Court is affirmed. Costs of this appeal are taxed to Kroger Limited Partnership I and The Kroger Company, for which execution may issue, if necessary.

---

[20] See *supra*, for a discussion of Kroger's motion for new trial.

_s/ J. Steven Stafford_
J. STEVEN STAFFORD, JUDGE